**Elven McKENZIE and Tucia McKenzie, Plaintiffs–Appellees,**

v.

**W. Gary POPE, Jeanette M. Pope, Thomas D. Whittingham, Cassandra Whittingham, Steve Whittingham, Diane Whittingham, and Soap Mesa Venture, LLC, Defendants–Appellants.**

**No. 00CA1610.**

Colorado Court of Appeals, Division I.

Sept. 13, 2001.

Murray Wilkening, P.C., Murray Wilkening, Lakewood, CO, for Plaintiffs–Appellees.

Dufford, Waldeck, Milburn & Krohn, L.L.P., Nathan A. Keever, Grand Junction, CO, for Defendants–Appellants.

Opinion by Judge DAVIDSON.

In this quiet title action, defendants, W. Gary Pope, Jeanette M. Pope, Thomas D. Whittingham, Cassandra Whittingham, Steve Whittingham, Diane Whittingham, and Soap Mesa Venture, LLC, appeal from the judgment entered after a bench trial in favor of plaintiffs, Elven and Tucia McKenzie (the McKenzies). We vacate the judgment and remand for further findings.

The McKenzies claimed title to the disputed property by virtue of adverse possession. The disputed property consists of approximately 3.5 acres lying east of the McKenzies' property and west of defendants' property.

The McKenzies purchased their property from Frank Carpenter in 1971. They have fenced most of their property, as well as the disputed property, since 1972. The court found that, contrary to defendants' assertion, no fence ever existed between the McKenzies' property and the disputed property.

At trial, several witnesses testified that, in 1978, the McKenzies exchanged their dump truck with Carpenter for the disputed property. That transaction, however, was not memorialized by a deed or contract. Testimony at trial indicated that the McKenzies tried unsuccessfully on numerous occasions

to obtain a deed from Carpenter and his successors in interest.

Defendants purchased their property in 1992 from a successor of Carpenter. At trial, both Elven McKenzie and Gary Pope recounted a 1994 conversation in which McKenzie told Pope about McKenzie's 1978 agreement with Carpenter to exchange the disputed property for the dump truck. However, they disagreed about the content of the conversation.

McKenzie first stated that Pope "said he owned the property, didn't mind if I used it." However, shortly thereafter, McKenzie testified that Pope "made the remark again that it was his property, he owned it, he didn't want anybody to use it." Later he agreed several times with counsel that Pope had said "I don't mind your using my property." McKenzie claimed that he did not respond to Pope's statements, but instead walked away.

At the close of the McKenzies' evidence, based in part on the premise that Pope's grant of permission to McKenzie defeated the McKenzies' adverse possession claim, defendants moved for a directed verdict. The court denied the motion.

Later, Pope was asked, during his testimony, whether McKenzie asked to use the disputed property and whether Pope had given McKenzie permission to do so. He replied: "No, because I did not consider Mr. McKenzie using the property." He also testified that he did not investigate McKenzie's claim of ownership, nor did he take any legal action against the McKenzies.

In 1997, more than eighteen years after the dump truck trade, the McKenzies sent a letter to defendants demanding a deed for the disputed property. Not receiving the deed from defendants, they commenced this action to quiet title.

In its ruling, the trial court found that all other elements of adverse possession had been met, but that the 1994 conversation between McKenzie and Pope, in which permission from the latter to the former to use the land may or may not have been granted, "presented the most difficult issue for the court." If adversity could be defeated by a grant of permission, the court stated, then the McKenzies' claim would necessarily fail, as there had been only fifteen years of adverse possession prior to the 1994 conversation. The court made no further findings on this issue, and, contrary to defendants' assertions, did not rule on the question of whether permission had been given.

However, the court went on to decide that, because defendants were aware of the adverse claim, they were obligated to initiate an action within the eighteen-year statutory period. Because they had failed to do so, title to the disputed property was quieted in favor of the McKenzies.

Defendants' sole argument on appeal is that the court erred in determining that the McKenzies owned the disputed property by adverse possession because, in the 1994 conversation between McKenzie and Pope, Pope had granted McKenzie's request for permission to use the property, and the McKenzies had done nothing to refute the grant of permission. The McKenzies respond that no permission had been granted and that, in any event, the trial court correctly ruled that defendants had failed to meet their obligation to interrupt the running of the McKenzies' adverse possession. We conclude that additional findings are required.

■ The elements of a claim of adverse possession are use of property that is actual, adverse, hostile, under claim of right, exclusive, and uninterrupted for the statutory period. *Salazar v. Terry*, 911 P.2d 1086 (Colo. 1996). In Colorado, eighteen years of adverse possession is conclusive evidence of absolute ownership. Section 38–41–101, C.R.S.2000.

■ To interrupt an otherwise valid adverse possession claim before the statutory period has run, the true owner must assert a claim to the land or perform an act that would reinstate the owner's possession. *See Bushey v. Seven Lakes Reservoir Co.*, 37 Colo.App. 106, 545 P.2d 158 (1975).

■ Here, it is not disputed that, during the running of the statutory period, defendants did not take any physical action to obstruct the McKenzies' use of the disputed property, nor did they institute any legal

action to remove the McKenzies from the property. However, defendants argue that a grant of permission to the McKenzies to use the disputed property, and subsequent inaction by the McKenzies, would be sufficient to interrupt the running of the statutory period of adverse possession. We agree.

Although an owner on notice of an adverse possession claim must take some action to interrupt the running of the statutory period, there are several alternative means of doing so. For example, the owner may attempt to physically limit the adverse possessor's access to the property, *see Restatement of Property* § 459 (1944); *Margoline v. Holefelder*, 420 Pa. 544, 218 A.2d 227 (1966), or pursue legal options, such as ejectment. *See Tioga Coal Co. v. Supermarkets General Corp.*, 519 Pa. 66, 546 A.2d 1 (1988). Or, as relevant here, the period of adversity can be interrupted if permission to use the property is granted to the adverse possessor by the true owner during the statutory period. *See Jesmer v. Hodge*, 471 P.2d 645 (Colo.App.1970)(not selected for official publication)(agreement granting permission to use a roadway defeats adverse possession claim); *Zivic v. Place*, 122 N.H. 808, 451 A.2d 960 (1982)(letter written by true owner giving permission to adverse possession claimant abrogated running of statutory period).

No single method is preferred or required. *See* William G. Ackerman & Shane T. Johnson, *Comment: Outlaws of the Past: A Western Perspective on Prescription and Adverse Possession*, 31 Land & Water L.Rev. 79 (1996).

Here, the trial court did not resolve the issue of permission, but instead incorrectly concluded that, even if permission had been given, defendants were required to take some other action to abrogate the McKenzies' possessory period. To the contrary, once on notice of the McKenzies' adverse claim, defendants were not obligated to take a particular course of action to disrupt the McKenzies' adverse possession, but instead had a variety of methods by which to achieve this objective, including the grant of permission. *See* Ackerman, *supra.*

Consequently, the validity of the McKenzies' adverse possession claim depends on two factors: whether Pope actually granted the McKenzies permission to use the property, and, if such permission was granted, whether the McKenzies took appropriate action to disclaim it.

The testimony on these questions is unclear. Pope claimed he did not grant McKenzie permission, and McKenzie gave contradictory testimony claiming both that Pope had granted McKenzie permission and that Pope had stated that he wanted no one using the property. Furthermore, there was conflicting evidence as to whether the McKenzies took any action to disclaim any permission they may have received from Pope. These factual issues can be determined only by the trial court. *See Cottonwood Hill, Inc. v. Ansay*, 709 P.2d 62 (Colo. App.1985)(the trial court decides the sufficiency, credibility, and weight of evidence).

Accordingly, the judgment is vacated, and the case is remanded for further findings on the issue of permission. On remand, if the court finds that permission had been granted and that no action to disclaim such permission was taken, judgment shall be entered for defendants, subject to appeal from that determination. If the court finds that permission had not been granted, judgment shall be entered for plaintiffs, also subject to appeal from that ruling.

Judge METZGER and Judge ROY, concur.