Thomas Everett TRASK, Jr. and Veruska Trask, Plaintiffs–Appellants and Cross–Appellees,

and

Doris E. Barz and Mi Vida Enterprises, Inc., a Utah corporation, Plaintiffs–Appellants,

v.

Mary Lou NOZISKO, Defendant–Appellee and Cross–Appellant,

and

Gold Hill Mines, Inc., a Colorado corporation, and Ashley V. Steen, Third–Party Defendants–Appellants.

No. 04CA1709.

Colorado Court of Appeals, Div. III.

March 9, 2006.

Hensley & Kennedy, P.C., John F. Hensley, Boulder, Colorado, for Plaintiffs–Appellants and Cross–Appellees and Plaintiff–Appellant Doris E. Barz.

Thomas J. Finch, Boulder, Colorado, for Plaintiff–Appellant Mi Vida Enterprises, Inc. and Third–Party Defendants–Appellants.

St. Clair & Greschler, P.C., Ira E. Greschler, Boulder, Colorado, for Defendant–Appellee and Cross–Appellant.

ROY, J.

Plaintiffs, Thomas Everett Trask, Jr., Veruska Trask, Doris E. Barz, and Mi Vida Enterprises, Inc., along with third-party defendants, Gold Hill Mines, Inc. and Ashley Steen (collectively, the owners), appeal the trial court's judgment quieting title in defendant, Mary Lou Nozisko (the adverse claimant) (1) for an area immediately adjacent to her cabin by adverse possession; (2) for a prescriptive easement for a driveway commencing in the ore storage area and continuing to a point near her cabin; and (3) for a prescriptive easement for parking in the ore storage area. The Trasks also appeal the judgment denying their claims for abuse of process. Mi Vida Enterprises, Gold Hill

Mines, and Ashley Steen appeal the trial court's failure to award them damages for trespass. The adverse claimant cross-appeals the trial court's failure to rule on her trespass claims. We affirm in part, vacate in part, and remand for further proceedings.

This dispute arose between adjacent landowners in a mountainous, sparsely populated area in Boulder County called the Gold Hill Community, which comprises, in part, overlapping mining claims.

The trial court did not make its own detailed findings of fact, but adopted the adverse claimant's proposed findings. The following facts either are undisputed, were found by the trial court, or are based on the testimony of, or the exhibits introduced by, the adverse claimant.

The adverse claimant owns the Maxwell Lode Mining Claim (the Maxwell), a 50 by 1,500-foot parcel of land oriented generally northwest-southeast. Two public roads cross the Maxwell, one north and one south of the cabin.

The Maxwell is overlapped by several other mining claims, three of which overlap it at its southeastern end, the Pickel Placer Mining Claim (the Pickel Placer), the Silver Queen Lode Mining Claim (the Silver Queen), and the Morning Glory Lode Claim (the Morning Glory). The Trasks and Mi Vida each own a one-half interest in the Pickel Placer, which lies perpendicular to and overlays the Maxwell on its southeasterly 250 feet. The Trasks also own the Silver Queen, which also lies perpendicular to the Maxwell, immediately north of the Pickel Placer, and overlaps the Maxwell for the next 300 feet. Gold Hill Mines and Ashley Steen own the Morning Glory Lode (the Morning Glory), which overlays the Maxwell and the north half of the Silver Queen. Mark Steen, Ashley Steen's father, is an officer, director, and shareholder of Mi Vida and Gold Hill Mines. The Maxwell is the senior claim.

The adverse claimant's predecessor in interest purchased the Maxwell in 1970 and constructed a seasonal cabin on that portion of the Maxwell which is overlapped by both the Silver Queen and the Morning Glory. During the construction of the cabin, he cre-ated a driveway, which starts on the Pickel Placer at a location known as the ore storage area, then proceeds in an arc across the Pickel Placer and the Silver Queen for approximately 310 feet to the northern boundary of the Silver Queen with land owned by the Bureau of Land Management (BLM), and then extends into the BLM land.

The ore storage area is located on the Pickel Placer and is a wide area immediately adjacent to a public road that enters the area from the southwest. The public road crosses a portion of the Pickel Placer and the southern end of the Maxwell, and then it reenters the Pickel Placer approximately 100 feet southwest of the ore storage area.

In 1980, the adverse claimant purchased the Maxwell as a principal residence, and she began using the driveway to gain access and parked either along the driveway or in the ore storage area. At the time of her purchase, the cabin was a small geodesic dome without a water supply, plumbing, or regularly installed electricity, and was set back from the property lines approximately twelve feet as required by the county. In 1984–85, without obtaining building permits, the adverse claimant constructed additions to the cabin, which extended it to the Maxwell property lines. In 1986, she drilled a domestic water well adjacent to the public road on the south end of the Maxwell.

In September 1984, Mark Steen and the adverse claimant discussed her use of the driveway. He was concerned that the adverse claimant was attempting to acquire rights to the Pickel Placer and the Silver Queen by prescription or adverse possession. At that time, the adverse claimant, though apparently not believing that Steen owned an interest in the land traversed by the driveway, asked him for a driveway easement. After he declined the request, the adverse claimant insisted that he obtain a survey to prove his ownership in the driveway and informed him that she would continue to use the dirt drive and the ore storage area.

Shortly thereafter, Steen constructed a large dirt berm and trench across the driveway using heavy equipment at, or near, the ore storage area. While driving home from work, the adverse claimant's then husband

was the first to encounter the berm, which was impassable by car. He got out of his vehicle, crawled over the berm, and walked to the cabin. There was a dispute as to how long the berm remained and blocked access to the driveway. The adverse claimant testified that it took her twelve hours spread over three days using a standard shovel to remove the berm so as to permit the passage of her car. However, several disinterested witnesses testified that they saw the berm there for several months. The trial court found:

> [The owner's] blocking of the [driveway] with a berm some time in October of 1984 was ineffective because [the adverse claimant] never acquiesced in the blockage of the [driveway], and because the blockage was ineffective to stop use. By a preponderance of the evidence, the Court finds that the berm was removed by [the adverse claimant] within one week of its erection.

Disputes also arose as to the adverse claimant's use of the ore storage area. Steen did not believe that the adverse claimant had a right to park her car in this area and asked her to park elsewhere. On one occasion, the adverse claimant apparently acquiesced in this demand or request.

This dispute continued for some time and resulted in tense confrontations between the parties, one of which occurred in early 2001. The adverse claimant became fearful when Thomas Trask conducted shooting practice near the adverse claimant's home after an argument. The following day, the adverse claimant obtained a restraining order against Trask. Shortly thereafter, apparently under the auspices of the restraining order, the adverse claimant hired an equipment operator to remove a berm that denied her access to the ore storage area for parking. When Trask attempted to interfere, there was a confrontation between him and the equipment operator which was at best confrontational.

In March 2001, the parties signed an interim agreement, which was apparently precipitated by the installation of a trench and dirt wall blocking the driveway on March 9, 2001. In that agreement, the parties agreed that the trench and dirt wall interrupted the adverse claimant's access to the driveway and ore storage area; any claim of adverse possession or prescriptive easement "must have come into existence prior to March 9, 2001;" and the adverse claimant's subsequent use was permissive subject to the outcome of this litigation. Therefore, to satisfy the adverse possession statute, § 38–41–101, C.R.S.2005, the adverse claimant's open, notorious, continuous, and adverse use or occupancy of the Pickel Placer, the Silver Queen, and the Morning Glory must have commenced on or before March 9, 1983. The adverse claimant, however, testified that she terminated that agreement in June 2001 so that she could go onto the Pickel Placer and remove an obstruction to the ore storage area.

Also in 2001, the adverse claimant filed an action in federal district court seeking to quiet title .to portions of the Pickel Placer, the Silver Queen, and the Morning Glory, together with land owned by the BLM, by prescriptive easement or adverse possession. The federal court dismissed the case for lack of jurisdiction.

In response, on October 9, 2001 the Trasks filed suit in the Boulder County District Court seeking to quiet title and alleging a claim for abuse of process arising out of the use of the restraining order. Mi Vida was then joined as a plaintiff. Ashley Steen and Gold Hill Mines were joined as third-party defendants after the adverse claimant counterclaimed for adverse possession, prescriptive easement, and trespass.

The trial court found that the adverse claimant had obtained title to land surrounding the Maxwell through adverse possession and prescriptive easements to the dirt drive and the parking area, and the court dismissed the abuse of process and trespass claims against the adverse claimant.

## I.

■ The owners first contend that because the trial court adopted the adverse claimant's findings of fact and conclusions of law verbatim, the trial court's findings should be reviewed de novo. While we disagree with that contention, we agree that the trial

court's findings are subject to a heightened scrutiny.

It is not good practice for the trial court to delegate the responsibility of drafting findings of fact and conclusions of law and to adopt them without apparent review. The task of the trial court is not limited to picking winners and losers. However, we will not overturn a trial court's findings of fact unless they are insufficient and fail to indicate the basis for the trial court's decision. *Uptime Corp. v. Colo. Research Corp.*, 161 Colo. 87, 420 P.2d 232 (1966).

Here, because the trial court adopted the adverse claimant's proposed findings of fact and conclusions of law verbatim, we will scrutinize them more critically than if they were produced by the trial court itself. *See Uptime Corp. v. Colo. Research Corp., supra.*

## II.

■ The owners next argue that the trial court erred in finding that the adverse claimant acquired portions of the Morning Glory and the Silver Queen adjacent to her residence by adverse possession because there is no evidence the adverse claimant had possession for the entire statutory period. We agree.

■ An appellate court will only reverse a trial court's findings of fact when those findings are clearly erroneous and unsupported by the record. *Welsch v. Smith*, 113 P.3d 1284 (Colo.App.2005).

■ To obtain ownership by adverse possession, a claimant must establish by a preponderance of the evidence that his or her possession was actual, adverse, hostile, under a claim of right, exclusive, and uninterrupted for the statutory period. *Goodwin v. Thieman*, 74 P.3d 526 (Colo.App.2003). In Colorado, the statutory period for adverse possession is eighteen years. Section 38–41–101(1).

■ Here, the properties are mining claims with conflicting surveyed boundaries. When, as here, the boundaries of the land claimed by adverse possession are not established by fences or other barriers, and when there is no deed describing the extent of the land claimed, the adverse claimant may not claim any property not actually occupied for the statutory period. *Smith v. Hayden*, 772 P.2d 47 (Colo.1989). "Actual occupancy means the ordinary use to which the land is capable and such as an owner would make of it." *Smith v. Hayden, supra*, 772 P.2d at 52 (quoting *Anderson v. Cold Spring Tungsten, Inc.*, 170 Colo. 7, 14–15, 458 P.2d 756, 759 (1969)). Moreover, to establish actual possession, the claimant's use must be sufficiently open and obvious to apprise the owner of the servient estate, in the exercise of reasonable diligence, that another is making use of the burdened land so that the owner may object. *Lively v. Wick*, 122 Colo. 156, 221 P.2d 374 (1950); *Palmer Ranch, Ltd. v. Suwansawasdi*, 920 P.2d 870 (Colo.App.1996). For use to be "hostile," the adverse possessor must demonstrate an intention to claim exclusive ownership of the property occupied. *Welsch v. Smith, supra.*

Here, the adverse claimant is claiming three small triangular parcels immediately adjacent to the Maxwell and the cabin. The dimensions of these parcels are the minimum necessary to provide her with the requisite setbacks, which were lost when the additions were constructed.

The trial court found that the adverse claimant's use of the property consisted of refuse clean-up, removal of trees and brush, and installation of flower gardens, fencing, structures, and pathways, commencing when she moved in. The trial court found that this use was occasioned by the adverse claimant's confusion as to setbacks and property lines. According to the adverse claimant, she removed trash from the area in 1981 and would occasionally walk through the area around the cabin, which consisted primarily of rock fields. However, the path to which the adverse claimant referred is on the Maxwell. The record is also clear that the adverse claimant installed a fence and a garden sometime in 1986 and installed improvements to a path from the residence to the head of the driveway sometime in the late 1980s. The adverse claimant testified that she maintained a shed for stacking wood and planted irises behind the cabin before 1986; however, there is no definitive evidence as to when that use commenced.

The findings of the trial court that the adverse claimant possessed or occupied portions of the Silver Queen and the Morning Glory in the immediate vicinity of her cabin in an open, notorious, and adverse manner necessary to acquire ownership through adverse possession are not supported by, or are contrary to, the undisputed evidence in the record.

The evidence showed that at the time the adverse claimant purchased the cabin, it was in bad condition, and the surrounding area was littered with scrap building materials, slash piles, and trash. The adverse claimant gradually removed the trash during the first months and years of her ownership and carried it away in a small passenger vehicle. She created a path for access to the crawl space under the residence, which, as it turned out, was on the Maxwell. None of these activities would put the owners on notice that the adverse claimant was making use of the Silver Queen and the Morning Glory.

In addition, while the adverse claimant planted irises and stacked wood on the Silver Queen and the Morning Glory and those activities might be sufficient to put the owners on notice, there is no evidence that those activities took place on or prior to March 9, 1983. While the construction of a flower or vegetable garden and a protective fence in 1986 certainly would put the owners on notice of the use, again, there is no evidence that this use commenced on or before March 9, 1983. In addition, the pathway improvements from the cabin to the head of the driveway were on land owned by the BLM. And finally, there is little or no connection between the evidence of possession and use, and the triangular parcels claimed. It is apparent from the adverse claimant's own testimony that these triangular parcels were designed to give her the required setbacks.

Therefore, we conclude that the trial court's findings are not supported by the record and that it erred in ruling that the adverse claimant gained ownership by adverse possession of the property immediately adjacent to her residence and within the Silver Queen and Morning Glory.

## III.

The owners of the Silver Queen and Pickel Placer next contend that the trial court erred in concluding that the adverse claimant obtained by prescription a driveway easement or a parking easement in the ore storage area. We agree as to the driveway easement and disagree as to the parking easement.

■ An easement by prescription is acquired when the use is open, notorious, or continuous without effective interruption for the statutory period and is either adverse or pursuant to an attempted but ineffective grant. *Lobato v. Taylor*, 71 P.3d 938 (Colo. 2002); *Welsch v. Smith, supra.* Here, there is no ineffective grant; and therefore, adversity is required. In Colorado, the prescriptive period is eighteen years. Section 38–41–101(1).

On review, we will not disturb a trial court's determination concerning the existence of a prescriptive easement if the court based its factual findings on competent evidence in the record. *Weisiger v. Harbour*, 62 P.3d 1069 (Colo.App.2002).

### A.

The owners contend that the adverse claimant failed to obtain the driveway easement by prescription because the use was interrupted by the installation of the earthen berm in October 1984. We agree.

■ To interrupt the acquisition of a prescriptive easement before the statutory period has run, the true owner must assert a claim to the land or perform an act that would reinstate the owner's possession. An owner may interrupt the running of the statutory period by physically limiting access to the property. *See McKenzie v. Pope*, 33 P.3d 1277 (Colo.App.2001).

Here, it is undisputed the construction of a large earthen berm at or near the ore storage area interrupted the use of the driveway for a period of three days or, as found by the trial court, less than a week. The dispositive issue is whether that interruption was sufficient. The trial court found that the interruption was not sufficient because the adverse claimant did not acquiesce and

removed it, despite undisputed evidence that the berm successfully denied the adverse claimant the use of the driveway for three days. The trial court concluded that the denial was not permanent or was ultimately defeated by the adverse claimant.

The parties have not cited any Colorado authority on the issue of how long a physical obstruction must be in place to sufficiently interrupt a period of adverse use and we have found none.

It is to be expected that the adverse user, as here, will attempt to remove any obstacle or barrier erected by the property owner which prevents the continued use of the way. This might be particularly true when, as here, the properties are remote, and the way is lengthy and serves as the access to a residence. Several jurisdictions have addressed the question whether a barrier or obstacle that prevents an adverse claimant from using the way, but is ultimately removed, defeated, or avoided, is sufficient to interrupt the running of the prescriptive period. They are not in agreement.

Some jurisdictions have taken the approach that no interruption will occur when an owner constructs a barrier for the purpose of interruption which is ultimately unsuccessful in defeating the adverse claimant's use, even when the adverse claimant is temporarily forced to discontinue use. *See S. Norwalk Lodge No. 709 v. Palco Hats, Inc.,* 140 Conn. 370, 100 A.2d 735 (1953)(erection of a locked gate, fence, and railroad ties not sufficient where barriers did not stop use); *Algermissen v. Sutin,* 133 N.M. 50, 61 P.3d 176 (2002)(construction of a fence that deterred use of driveway was insufficient because different path was then used); *Concerned Citizens Taxpayers Ass'n v. State ex rel. Rhodes,* 329 N.C. 37, 404 S.E.2d 677 (1991)(installation of multiple barricades not sufficient if it does not prevent use of the easement); *Keefer v. Jones,* 467 Pa. 544, 359 A.2d 735 (1976) (construction of a gate by the owner did not stop actual use and not constructed with intent to stop use).

The North Carolina Supreme Court's decision in *Concerned Citizens Taxpayers Ass'n, supra,* illustrates, perhaps in the extreme, the position that an owner must not only erect a physical barrier, but must actually prevent the adverse claimant's continued use. There, the adverse claimant attempted to prevent the public from using his dirt road to gain access to a beach. The owner first erected forty to fifty "No Trespassing" signs, which the public tore down and used for firewood. The owner then placed a piece of telephone pole across the road. The public merely drove around the pole. The owner then strung a padlocked cable across the road, but the public managed to drive around the cable. The owner then installed gates across the road, but the public dug ditches around the gates to get around them. The owner replaced the gates several times, but was unable to stop the public from using the road. The North Carolina Supreme Court held that these efforts on the part of the servient owner were insufficient:

> The fact that the barricades placed by the defendant may have discouraged the use of the pathway by a few members of the public or even suspended its use very briefly by the entire public does not destroy the public's continuity of use for the period necessary to establish its right by prescriptive use. To effectively defeat a prescriptive right, an interruption of the use must be accompanied by some act of the owner which *prevents* the use of the easement. A "substantial" interruption during the period of use will defeat the plaintiffs' claim to the prescriptive easement.

*Concerned Citizens Taxpayers Ass'n v. State ex rel. Rhodes, supra,* 329 N.C. at 52, 404 S.E.2d at 686 (citations omitted).

Other jurisdictions have held it sufficient that the owner erect a physical barrier adequate to, and for the purpose of, interrupting the use by an adverse user, regardless of whether the barrier is defeated by the user or is not effective in permanently defeating the use. *See Kelley v. Westover,* 56 Ark.App. 56, 938 S.W.2d 235 (1997)(verbal protests and installation of barbed wire and a gate across the road, as well as piling of debris, sufficient to interrupt use even though the adverse claimant continued to use road); *Dalton v. Real Estate & Improvement Co.,* 201 Md. 34, 92 A.2d 585 (1952)(planting of railroad ties

and gate across road sufficient although passage was still possible); *Garrett v. Mueller,* 144 Or.App. 330, 927 P.2d 612 (1996)(gate across road sufficient even though the adverse use continued); *Pittman v. Lowther,* 363 S.C. 47, 610 S.E.2d 479 (2005)(installation of a cable across road, and planting of rye in road sufficient interruption even though the adverse claimant plowed down barriers).

■ In our view, a barrier established for the purpose of, and in fact, interrupting an adverse claimant's use is effective even if it is ultimately removed by the adverse claimant. As with other jurisdictions, we agree with Justice Oliver Wendell Holmes, Jr., who stated:

> [T]here was an opening in the fence, through which the plaintiff passed; but it appeared by the testimony of all the witnesses, and was not disputed, that this opening had been obstructed within 20 years, although there was evidence that the obstructions were torn down soon after they were put up . . . .
>
> We are of opinion that such an assertion of right on the part of the [owner] was sufficient to prevent the gaining of a right of way. A landowner, in order to prevent that result, is not required to battle successfully for his rights. It is enough if he asserts them to the other party by an overt act, which, if the easement existed, would be a cause of action. Such an assertion interrupts the would-be dominant owner's impression of acquiescence, and the growth in his mind of a fixed association of ideas; or, if the principle of prescription be attributed solely to the acquiescence of the servient owner, it shows that the acquiescence was not a fact.

*Brayden v. New York, N.H. & H.R. Co.,* 172 Mass. 225, 225–26, 51 N.E. 1081, 1081–82 (1898); *see also Garrett v. Mueller, supra; Pittman v. Lowther, supra.*

This approach comports with Colorado's policy of favoring the record owner. *See DeCola v. Bochatey,* 161 Colo. 95, 420 P.2d 395 (1966); *Welsch v. Smith, supra.*

In addition, though the remedy may not available to the adverse claimant here because two public roads traverse the Maxwell,

Colorado provides for private condemnation for easements of necessity. *See* Colo. Const. art. II, § 14; § 38–1–102(3), C.R.S.2005. This approach is particularly appropriate when, as here, the site of the adverse use is remote and not owner occupied.

Finally, requiring owners to preserve a sufficient barrier for any extended period of time against the efforts of the adverse user to remove and defeat it invites confrontation, which can be unpleasant, violent, dangerous, and in some instances even deadly. *See, e.g.,* Gerry Spence, *The Smoking Gun: Day by Day Through a Shocking Murder with Gerry Spence* (2003)(deadly confrontation over use of a private road).

The adverse claimant relies in part on Restatement (Third) of Property: Servitudes § 2.17 (2000), which states that for physical interruption to be sufficient, it must stop the use entirely, and if the use resumes, the interruption was not successful unless the "cessation of use was long enough to indicate abandonment." However, the Restatement (Third) does not cite any authority for the duration requirement specified or, for that matter, any duration requirement.

The adverse claimant asserts that our supreme court adopted the Restatement (Third) with respect to prescriptive easements in *Lobato v. Taylor, supra.* She also relies, in part, on *Friends of Black Forest Regional Park, Inc. v. Board of County Commissioners,* 80 P.3d 871 (Colo.App.2003), and *Weisiger v. Harbour, supra,* to support her conclusion.

However, *Lobato v. Taylor, supra,* referred to, and quoted from, Restatement (Third) § 2.16 in its discussion of the necessity of adversity in obtaining a prescriptive easement following a failed grant. And while the court said the prescriptive use must be uninterrupted, interruption was not an issue in that case. Further, although *Friends of Black Forest Regional Park v. Board of County Commissioners, supra,* and *Weisiger v. Harbour, supra,* cite to *Lobato v. Taylor, supra,* they do not cite to the Restatement, nor do they address the issue of interruption.

The adverse claimant also argues that the reliance on the Restatement (Third) in *Loba-*

to v. Taylor, supra, essentially supersedes McKenzie v. Pope, supra, which relied in part on Restatement (First) of Property § 459 (1944), and that the facts of Lobato v. Taylor, supra, more closely parallel this case than do the facts of McKenzie v. Pope, supra. We are not convinced as to either proposition.

As to the former, the "adoption" of, or quoting from, one or more sections of the Restatement (Third) is not the "adoption" of the entire Restatement (Third). As to the latter, McKenzie v. Pope, supra, is an interruption case, there by granting a permission, and is considerably closer to the facts of this case than is Lobato v. Taylor, supra, in which interruption was not an issue and which turned on a failed grant.

The Restatement (First) states that any physical act done for the purpose of interruption which causes even a temporary cessation of use is sufficient for purposes of interruption. See also 4 R. Powell, Powell on Real Property § 34.10(3)(b) (Michael A. Wolf, ed., 2000)(interruption sufficient no matter how brief). This position is more compatible with, but not identical to, our conclusion.

▮ Because the owners physically interrupted the adverse claimant's use of the driveway within the prescriptive period, we conclude that no prescriptive easement was obtained. Having so concluded, we need not address the adverse claimant's other arguments regarding the driveway or her cross-appeal arguing that the trial court failed to rule on her trespass claims related to the driveway.

### B.

▮ The owners of the Pickel Placer contend that the trial court erred in concluding that the adverse claimant obtained a prescriptive easement for parking her and her guests' vehicles in the ore storage area. The owners' only argument is that the prescriptive period was interrupted by the adverse claimant's acceding, on one occasion, to Steen's direction to park on her own land. We disagree.

▮ In general, when an adverse occupier acknowledges or recognizes the title of the owner during the occupant's claimed prescriptive period, the occupant interrupts the prescriptive use. Pagel v. Reyman, 628 P.2d 166 (Colo.App.1981). However, interruption does not occur where a landowner merely gives notice to the occupant of land that he or she is not entitled to use the land. Restatement (Third), supra, § 2.17 cmt. j.

There is no dispute that the adverse claimant and her predecessor in interest, together with their guests, used the storage area for parking commencing well before March 9, 1983, and continuing through the prescriptive period to March 9, 2001. The trial court found, with support in the record, that the adverse claimant's use was adverse because the owners never gave consent and consent could not be implied.

The evidence showed that the adverse claimant parked on her own land at Steen's request, not as an acknowledgment of his superior title, but to avoid a confrontation. In fact, the adverse claimant had previously told Steen that she would continue to park in the ore storage area until he proved he owned it. As such, the record supports the trial court's findings that the adverse claimant did not acknowledge the superior title of the owners and the prescriptive period was not interrupted. In addition, the berm installed by the owners in 1984 did not block access to the ore storage area.

Therefore, the trial court did not err in concluding that the adverse claimant had obtained a prescriptive easement for the parking of her and her guests' vehicles in the ore storage area.

### IV.

▮ Thomas Trask contends that the trial court erred in dismissing his claim that the adverse claimant's improper use of a restraining order was an abuse of process. We remand for further proceedings.

▮ A prima facie case for abuse of process includes proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages. See Aztec

*Sound Corp. v. W. States Leasing Co.,* 32 Colo.App. 248, 510 P.2d 897 (1973).

The essential element of an abuse of process claim is the use of a legal proceeding in an improper manner. *Inst. for Prof'l Dev. v. Regis Coll.,* 536 F.Supp. 632 (D.Colo.1982)(applying Colorado law). Therefore, an improper *use* of the process must be established. *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail,* 892 P.2d 367 (Colo.App.1994).

Here, the trial court found that a restraining order was entered against Trask after he discharged weapons while taking target practice near the adverse claimant's cabin. This restraining order was issued June 19, 2001, was consented to, and prohibited him from having any contact with the adverse claimant, required him to stay at least 100 yards from the adverse claimant, and enjoined him from discharging firearms on the Silver Queen and the Pickel Placer or toward the adverse claimant's cabin.

On June 26, 2001, the adverse claimant hired a man and small loader to remove a berm prohibiting access to the ore storage area, which resulted in the confrontation between Trask and the machine operator. The adverse claimant was present supervising the removal of the berm, and the machine operator asked her whether she had her court papers. This activity was undertaken, according to the evidence, under the auspices of the temporary restraining order, which the adverse claimant was using as a weapon instead of a shield.

While the trial court was correct to examine whether the temporary restraining order was properly issued in the first instance, the trial court's inquiry should not have ended there. Rather, the trial court should have considered the use made of the restraining order by the adverse claimant, which was the gravamen of Trask's claim. Therefore, we remand to the trial court for further findings on this issue and, if appropriate, the award of damages.

## V.

On cross-appeal, the adverse claimant argues that the trial court erred in failing to rule on her counterclaim for trespass against the Trasks. We disagree.

The elements for the tort of trespass are a physical intrusion upon the property of another without proper permission from the person legally entitled to possession of that property. *Hoery v. United States,* 64 P.3d 214 (Colo.2003). Damages available on trespass claims can include not only diminution of market value, costs of restoration, and loss of use of the property, but also discomfort and annoyance to the property owner as the occupant. *Webster v. Boone,* 992 P.2d 1183 (Colo.App.1999).

Here, the adverse claimant's trespass claim arises out of her receipt of an anonymous and threatening note, the destruction of irises planted on her property, the placement of rocks on the driveway, the construction of the berm in 2001, and emotional discomfort as a result of incursions on her property.

We are not aware of any authority, and none has been cited to us, that holds that sending a letter, anonymous or not, to a person or shouting at the person can give rise to a claim of trespass to real property. Further, because the adverse claimant claimed title by adverse possession, in part, because her iris plants were on the Silver Queen, the Morning Glory, or both, it can be inferred that the damaged plants were on the Silver Queen or the Morning Glory. That being the case, the adverse claimant cannot sustain a trespass claim for damage to her iris plants. In addition, as we have previously indicated, because the adverse claimant has no prescriptive driveway easement, she has no claim for trespass on the driveway.

Given that there is no evidence of physical trespass by the Trasks on the Maxwell, the adverse claimant's trespass claim is reduced to her displeasure with shouting that can be heard from her property.

Therefore, while the trial court should have ruled on the adverse claimant's trespass claim, that claim has not been established. Further, we note that the trial court's findings and conclusions were prepared by counsel for the adverse claimant

who now challenges the adequacy of those findings. Accordingly, we need not remand the trespass claim to the trial court for further findings.

## VI.

██ Finally, the owners assert that the trial court should have made findings and conclusions as to the scope of any prescriptive easement for parking in the ore storage area. We remand for further findings.

In *Wright v. Horse Creek Ranches,* 697 P.2d 384 (Colo.1985), our supreme court dealt with the scope of the use of an easement. With respect to prescriptive easements, the court adopted Restatement (First), *supra,* § 477, which states: "The extent of an easement created by prescription is fixed by the use through which it was created." A companion provision, Restatement (First) § 478, states with respect to uses:

In ascertaining whether a particular use is permissible under an easement created by prescription a comparison must be made between such use and the use by which the easement was created with respect to (a) their physical character, (b) their purpose, and (c) the relative burden caused by them upon the servient tenement.

Here, the adverse claimant introduced surveys prepared at her request that indicated a claim for prescriptive easements significantly larger than the apparent historic use. As pertinent here, the easement across the road on the Pickel Placer, which provides access to the ore storage area, is thirty feet wide, while the depiction of the actual width of the existing road is closer to ten feet. The parking easement claimed in the ore storage area is in excess of 3,000 square feet. It is significantly greater in size than the entire ore storage area, and significantly greater than that required to park one or two vehicles.

While the trial court referred to the surveys presented by the adverse claimant, it made no findings as to the geographic extent of the use that matured into a prescriptive easement, and the case must be remanded for that purpose.

██ We appreciate the adverse claimant's argument that these matters were not raised in the trial court. However, it is the adverse claimant's burden to establish the scope and extent of her claims. Here, the surveyor was not called as a witness, and the adverse claimant did not testify as to the necessary extent or scope of the claimed prescriptive easement. On remand, the trial court may in its discretion take additional evidence on this issue.

## VII.

██ Finally, Gold Hill Mines, Inc. and Ashley V. Steen, as owners of the Morning Glory, and Mi Vida as co-owner of the Pickel Placer, contend that the trial court erred in denying them any relief on their trespass claims against the adverse claimant. We conclude that a remand is required.

The trial court, without making any findings of fact specific to the trespass claims denied Gold Hill Mines, Ashley Steen, and Mi Vida any relief because it had resolved the adverse claimant's adverse possession and prescriptive easement claims against them. Because we have vacated the trial court's judgment with respect to the driveway easement on the Pickel Placer and the adverse possession claims on the Morning Glory, we must remand to the trial court to further findings and conclusions with respect to these trespass claims.

The trial court's judgment is vacated to the extent it grants the adverse claimant ownership by adverse possession of portions of the Silver Queen and Morning Glory adjacent to the Maxwell and her cabin and a prescriptive easement for a driveway across the Pickel Placer and Silver Queen. The trial court's judgment is affirmed to the extent it grants the adverse claimant a prescriptive easement for parking in the ore storage area on the Pickel Placer, and the case is remanded for further proceedings to determine the extent and scope of that prescriptive easement. In addition, the case is remanded for further findings as to Trask's claim for abuse of process and the trespass claims of Gold Hill and Ashley Steen on the Morning Glory and Mi Vida as to the driveway on the Pickel

Placer. The judgment is affirmed in all other respects.

TAUBMAN and LOEB, JJ., concur.