25CA0586 Marriage of George 02-19-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0586
Eagle County District Court No. 21DR174
Honorable Rachel Olguin-Fresquez, Judge

In re the Marriage of

Derek Andrew George,

Appellant,

and

Jodi Melissa Link,

Appellee.

ORDERS AFFIRMED

Division VII
Opinion by JUDGE BERNARD*
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

JVAM PLLC, Lucas F. Van Arsdale, Quentin H. Morse, Glenwood Springs, Colorado, for Appellant

Jodi Melissa Link, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Father, Derek Andrew George, appeals the trial court's orders modifying child support and denying his C.R.C.P. 59 motion for reconsideration.  We affirm.

## I.     Background

¶ 2     Father and mother, Jodi Melissa Link, married in April 2008, had two children during the marriage, and divorced in October 2022.  The divorce decree incorporated their separation agreement, which did not require either of them to pay child support.  But it left open the possibility that either parent could seek child support in the future, and, at the hearing at which the decree was entered, mother stated that she "want[ed] to make sure that [she could] still file for child support" and that she was "planning on applying for it next week."  Father understood that the "option" to pursue child support "at any time in the future . . . seemed fair to both of us."

¶ 3     In December 2023, mother asked the court to do two things: (1) void the divorce decree under C.R.C.P. 60(b), alleging it was unconscionable; and (2) modify the child support order — although, in this case, modification meant imposing a child support order in the first instance — under section 14-10-122, C.R.S. 2025.  A hearing was held on these motions in January 2025, and the court

1

dismissed mother's motion to vacate the decree, deciding that it was untimely.

¶ 4    The court relied on C.R.C.P. 16.2(e)(10), however, as the mechanism to address mother's request for child support, reasoning that mother alleged there had been evidence concerning the marital assets that was "not disclosed or [was] mistakenly disclosed." The court held the hearing, listened to testimony, and analyzed exhibits, including the child support worksheets.

¶ 5    The court issued an order in early February 2025. The order

- required father to pay child support of $1,592.96 monthly based on the incomes of father and mother;

- deviated father's support obligation upward by $500 per month, to a total of $2,092.96, because

  o his "investments and assets" had "higher financial potential returns than is apparent on tax returns or other documents that have been provided";

  o mother had "less disposable income" because she was "rebuilding her business"; and

  o there was, therefore, a "gross disparity of the parties' incomes at this present time"; and

- stated that father's duty to pay monthly child support of $2,092.96 began on December 21, 2023, the date when mother filed her motion to modify child support, which meant that
  - father's child support arrears for December 2023 were $675.15;
  - his child support arrears for January 1, 2024, to February 1, 2025, were $27,208.48; and
  - his total child support arrearage was $27,883.63;
- added $300 to father's monthly child support obligation, for a total of $2,392.96 per month, to pay off the arrearage over time;
- stated that father's monthly child support payments would begin on February 1, 2025; and
- stated that father's child support payment would revert to $2,092.96 once the arrearage had been paid off.

¶ 6    The court arrived at the $1,596.92 child support amount by finding that father's monthly adjusted gross income was $15,375. (This was the same amount that mother claimed was father's monthly income.)  The court wrote it had landed on this figure

"based upon an in-depth analysis of the . . . bank statements [from father's business] that he has disclosed for the 2023 tax year and excluding allowable business expenses claimed in his 2023 tax return."  Father claimed his monthly income was around $6,000.

¶ 7    Mother's monthly adjusted gross income was $1,923.

¶ 8    The court arrived at the $500 monthly upward deviation in child support to $2,092.96 because it was "convinced" father had "investments and assets that have higher financial returns than [are] apparent on tax returns or [on] other documents."  One example was father's Bitcoin holding, which the court recognized carried greater risk, but which also provided greater "financial return."

¶ 9    Father filed a C.R.C.P. 59 motion asking the court to reconsider its child support order, which the court denied.

## II.    Child Support

¶ 10    Father contends the court abused its discretion when it (1) set his monthly child support obligation at $1,592.96 because it did not properly calculate his adjusted gross income; and (2) improperly deviated his support obligation upward by $500 to $2,092.96.  We disagree.

4

## A. Standard of Review

¶ 11  "We review child support orders for an abuse of discretion . . . ." *In re Marriage of Boettcher*, 2018 COA 34, ¶ 6 (quoting *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011)), *aff'd*, 2019 CO 81.  A court abuses its discretion when it acts in a manifestly arbitrary, unreasonable, or unfair way, or when it misapplies the law.  *In re Marriage of Herold*, 2021 COA 16, ¶ 5.  We will not disturb a court's factual findings unless the record does not support them.  *In re Marriage of Schaefer*, 2022 COA 112, ¶ 8.  And we review de novo "whether the district court applied the correct legal standard."  *Boettcher*, ¶ 7.

## B. Calculation of Father's Adjusted Gross Income

¶ 12  A parent's child support obligation is based on the parents' combined gross income and is calculated by applying the statutory schedule in section 14-10-115(7)(b), C.R.S. 2025.  *In re Marriage of Glenn*, 60 P.3d 775, 777 (Colo. App. 2002).  For self-employed parents, gross income "equals gross receipts minus ordinary and necessary expenses . . . required to produce such income."  § 14-10-115(5)(a)(III)(A).  The ordinary and necessary expenses used to calculate self-employment income do not include any business

expenses the court decides are inappropriate. § 14-10-115(5)(a)(III)(B). Ordinary and necessary business expenses also do not include "amounts allowable by the internal revenue service for the accelerated component of depreciation expenses or investment tax credits." *Id.*

¶ 13 Father asserts the court erred in two ways when calculating his self-employment income. First, he submits that the court did not properly determine the total amount of gross receipts he received from his business and from a rental property. Second, he submits that the court did not subtract the ordinary and necessary expenses he incurred when running the business and maintaining the rental property.

¶ 14 We begin by noting the court's factual findings concerning father's income are terse. But, after reviewing the record, we conclude we can determine the basis of its order. *See Moeller v. Colo. Real Est. Comm'n*, 759 P.2d 697, 703 (Colo. 1988)("[T]hough the factual findings of the trial court are brief and undetailed, we are able to determine the basis of the trial court's judgment from its findings and a review of the record."); *In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989)("The trial court's order is neither as

6

detailed nor as complete as might be desired. . . . [But] [w]hen a trial court's order is supported by competent evidence, it should not be disturbed on review.").

¶ 15    Next, we take father's point that the court's order exactly mirrored mother's statement that father's monthly adjusted gross income was $15,375. We shall, as a result, carefully look at the record to see whether it supports the court's findings. *See Trask v. Nozisko*, 134 P.3d 544, 549 (Colo. App. 2006)(a district court's findings are subject to heightened scrutiny when they mirror a party's proposed findings verbatim). After doing so, we conclude the court did not abuse its discretion when it calculated his monthly adjusted gross income.

¶ 16    What we discover in the record is that, based on deposits into bank accounts for father's business and his rental property, father's monthly gross receipts — not to be confused with his adjusted gross monthly income — were $32,446. We reject father's assertion that the court erred when it relied on this figure to calculate his income. Courts may rely on deposits into a business bank account to calculate a parent's self-employment income if it is clear where the deposits came from. *See In re Marriage of Nimmo*, 891 P.2d

1002, 1008 (Colo. 1995)("Claims that are too speculative may not be used to determine child support.").

¶ 17    Whether the deposits were income for the business and the rental property was a question of fact for the trial court to resolve. *See In re Marriage of Finer*, 920 P.2d 325, 329 (Colo. App. 1996). And the record supports the court's finding.  For example, the deposits into the business bank account came primarily from Square, a business technology platform that allows business owners to accept payments for services, and the deposits into the rental property bank account came primarily from Airbnb, a platform that allows property owners to accept payments for leasing their property.

¶ 18    Our review of the record "reveals nothing to warrant reversal of the trial court's implicit determination that any claimed expenses were not necessary or required to produce the . . . income in question." *In re Marriage of Cropper*, 895 P.2d 1158, 1161 (Colo. App. 1995).  For example, a court may forgo allowing straight-line depreciation as an expense at its own discretion, § 14-10-115(5)(a)(III)(B), so we reject father's assertion that the court erred when it did not reduce his income with such depreciation.

## C. Deviation

¶ 19 Father contends the court abused its discretion when it decided to deviate his $1,592.96 child support obligation upward by $500 to $2,092.96. We disagree.

¶ 20 There is a rebuttable presumption that child support should correspond with the statutory guidelines. § 14-10-115(8)(e). A court has discretion to deviate from the statutory guidelines "if it determines that the presumptive amount would be 'inequitable, unjust, or inappropriate.'" *Boettcher*, 2019 CO 81, ¶ 14 (quoting § 14-10-115(8)(e)). If the district court deviates from the schedule, it must make findings identifying the amount of the deviation and its reasons for the deviation. *Id.*

¶ 21 The child support statute lists several reasons that would support a deviation, but they are not exhaustive. § 14-10-115(8)(e). Courts may also deviate for reasons other than those enumerated. *Id.* We will not disturb a court's decision to deviate from the statutory guidelines if it is supported by the record. *Boettcher*, 2019 CO 81, ¶ 18.

¶ 22 Father submits the court abused its discretion in three ways when it decided to upwardly deviate his child support obligation:

- mother did not ask for an upward deviation, so father says the court could not award one;

- father says there was no basis in the record for the court to find that he had additional unidentified assets; and

- the court did not explain how a deviation based on a gross disparity in income between father and mother would address the children's needs.

¶ 23 We disagree with all three submissions, and we conclude, for the following reasons, that the court did not abuse its discretion when it deviated father's child support obligation upward by $500 per month.

¶ 24 First, a court has the discretion to award a deviation on its own. *In re Parental Responsibilities of M.G.C.-G.*, 228 P.3d 271, 272 (Colo. App. 2010)(even though neither party requested a deviation, the division found that the court had discretion to deviate from the child support guidelines and, on remand, could consider whether a deviation was warranted). The child support statute does not condition awarding an upward deviation on a party's request, so we will not read such a limitation into the statute. *See Springer v. City*

*& County of Denver,* 13 P.3d 794, 804 (Colo. 2000)("Where the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute.").

¶ 25    Second, there is evidence in the record supporting the court's finding that father had unidentified assets.  In deciding that a deviation was appropriate, the court said, "[U]pon reviewing the evidence," father's "investment opportunities, both the rental properties, bitcoin, and other investments do seem to give him a greater potential for monetary return."

¶ 26    Father disputes the court's findings, asserting that he sold his crypto currency holdings and that he no longer trades in crypto currency.  But he testified at the January 2025 hearing that he transferred money from a trading account to help float his business.  Indeed, upon review of the business's bank statements for 2023, we see there is a $10,000 deposit from TradeStation, a now-defunct brokerage that dealt in crypto currency, and a transfer to Binance, which is a large crypto currency exchange.

¶ 27    In the separation agreement, father acknowledged that he had investment accounts.  When he testified at the January 2025

11

hearing, he also admitted that "he did a bit of trading" in exchange-traded funds, and, although he had not "really made a lot of money doing it," he hoped he might someday.

¶ 28 Third, the court explained why it deviated father's child support obligation.

¶ 29 Initially, the court found there was evidence that he had additional investments and assets affording him extra income.

¶ 30 Then, the court identified a "gross disparity" between father's and mother's incomes.

¶ 31 Last, the court said, "it is disturbing that [father] . . . was so willing to set his children into such an unstable living situation with [mother]." This statement indicates the court was concerned about how the gross income disparity between father and mother would affect the children's welfare while living with mother.

### III. Mother's Employment

¶ 32 Father contends the court abused its discretion "by failing to make any specific findings" in support of its determination that mother was not voluntarily underemployed.

## A. Standard of Review and Applicable Law

¶ 33 Whether a parent is voluntarily underemployed is a mixed question of law and fact. *In re Marriage of Young*, 2021 COA 96, ¶ 21. But we review de novo whether the court applied the correct legal standard. *In re Marriage of Garrett*, 2018 COA 154, ¶ 18. We will uphold a court's findings of fact if they are supported by the record. *Schaefer*, ¶ 8.

¶ 34 Parents are not considered voluntarily underemployed if their "employment is temporary and is reasonably intended to result in higher income within the foreseeable future" or if their "employment is a good faith career choice that is not intended to deprive a child of support and does not unreasonably reduce the support available to a child." § 14-10-115(5)(b)(III)(A)-(B). "Voluntarily" means intentionally, of one's free will. *Garrett*, ¶ 10. Parents are voluntarily underemployed when they shirk their parental obligations "by unreasonably forgoing higher-paying, obtainable employment." *Id.*

## B. Analysis

¶ 35 Father asserts the court abused its discretion when it did not make findings of fact supporting its determination that mother was

not voluntarily underemployed. We disagree, and we conclude the court did not abuse its discretion when it made this decision because the decision was supported by facts in the record.

¶ 36 The court made adequate findings regarding mother's employment. It is true the court stated that mother "may be somewhat underemployed currently," but this statement was made in the context of the court recognizing mother "convincingly testified that she is building business in hopes of a higher income level." *See* § 14-10-115(5)(b)(III)(A). The court also stated it was "very likely," based on "past performance," that mother will be able to build her business up. Then, the court observed that mother was not trying to shirk her parental responsibilities and that, while mother's income may have been higher in the past, the loss of income was due to her rebuilding her business, not to an attempt to be underemployed to drive up father's child support obligation.

¶ 37 The record supports the court's findings. Mother testified that her childcare business fell off sharply during the COVID-19 pandemic. After the pandemic abated, her childcare business was put on hold while father built up his business because mother took on the sole responsibility of childcare and homeschooling the

children. Mother also said that, after the divorce, she struggled with the stability of housing for herself and the children, all the while trying to rebuild the childcare business.

### IV. Mother's Request for Attorney Fees and Costs

¶ 38    Stating that she has "limited financial resources," mother asks us to award her "attorney fees and costs associated [with] the filing of [her] [r]esponse."

¶ 39    We deny her request for attorney fees because she was not represented by counsel on appeal, so she is not entitled to attorney fees as a matter of law. *See Smith v. Furlong*, 976 P.2d 889, 890 (Colo. App. 1999).

¶ 40    But, because we affirm the judgment, mother is entitled to her appellate costs under C.A.R. 39(a)(2), which states, "[I]f a judgment is affirmed, costs are taxed against the appellant." Mother may pursue those costs in the trial court by following the procedure described in C.A.R. 39(c)(2).

¶ 41    The orders are affirmed.

JUDGE PAWAR and JUDGE GOMEZ concur.