The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 27, 2020

## 2020COA34

**No. 18CA2250, *Woodbridge Condominium Association, Inc., v. Lo Viento Blanco, LLC* — Real Property — Prescriptive Easements — Adverse Use**

A division of the court of appeals addresses whether the requirement that the use be "adverse" in the adverse possession of property context is coextensive with the requirement of adverse use in the prescriptive easement context. While there is overlap, the division concludes that overlap is not complete; claim to exclusive ownership during the prescriptive period is required to show hostile adverse use when a party seeks to acquire title by adverse possession, but it is not required when a party seeks to acquire a prescriptive easement by adverse use. Rather, adverse use in the prescriptive easement context requires only a showing of use made

without consent or other authorization of the landowner, such as would justify a tort action for interference with property rights. Applying this rule, the division affirms the trial court's conclusion that plaintiff Woodbridge Condominium Association Inc. acquired a prescriptive easement over the disputed parcel. The division also affirms the trial court's ruling as to the scope of that easement.

COLORADO COURT OF APPEALS                                        **2020COA34**

Court of Appeals No. 18CA2250
Pitkin County District Court No. 12CV223
Honorable Christopher G. Seldin, Judge

Woodbridge Condominium Association, Inc., a Colorado nonprofit corporation,

Plaintiff-Appellee,

v.

Lo Viento Blanco, LLC, an Arizona limited liability,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE J. JONES
Harris and Brown, JJ., concur

Announced February 27, 2020

Peck Feigenbaum PC, Heather J. Manolakas, Lucas Peck, Denver, Colorado, for
Plaintiff-Appellee

Law Office of James A. Knowlton, LLC, James A. Knowlton, Denver, Colorado,
for Defendant-Appellant

¶ 1    Lo Viento Blanco, LLC (Lo Viento) owns an approximately half-acre (actually 0.452-acre) piece of property in Snowmass Village (the disputed parcel).  Reversing the trial court, a prior division of this court held that Woodbridge Condominium Association, Inc. (Woodbridge) hadn't acquired the disputed parcel by adverse possession.  *Woodbridge Condo. Ass'n, Inc. v. Lo Viento Blanco, LLC*, (Colo. App. No. 15CA0596, May 19, 2016) (not published pursuant to C.A.R. 35(f)) (*Woodbridge I*).  On remand, however, the trial court found that Woodbridge is entitled to a prescriptive easement over most of the disputed parcel.

¶ 2    Lo Viento again appeals, contending that the trial court erred by finding a prescriptive easement and also by delineating the scope of the easement.  To resolve Lo Viento's first contention, we must address, among other issues, whether the requirement that the use be "adverse" in the adverse possession context is coextensive with adverse use in the prescriptive easement context.  We conclude that while those requirements overlap, that overlap isn't complete.  As most relevant, we hold that while claim to exclusive ownership during the prescriptive period is required to show hostile adverse use when a party seeks to acquire title by adverse possession, it

1

isn't required when a party seeks to acquire a prescriptive easement by adverse use. Rather, adverse use in the prescriptive easement context requires only a showing of use made without consent or other authorization of the landowner, such as would justify a tort action for interference with property rights. *See* Restatement (Third) of Property: Servitudes § 2.16 cmt. b (Am. Law Inst. 2000). And for this reason, a user's recognition of the landowner's title doesn't necessarily defeat a claim for a prescriptive easement based on adverse use.

¶ 3     The trial court properly applied these principles. And because (1) its underlying findings of historical fact enjoy record support; (2) Lo Viento's separate contention that its predecessor in title gave Woodbridge permission to use the disputed parcel fails; and (3) the other elements of a prescriptive easement claim aren't disputed, we affirm its conclusion that Woodbridge acquired a prescriptive easement over the disputed parcel. We also affirm the trial court's ruling as to the scope of that easement.

## I.    Background

### A.    Historical Facts

¶ 4    In the early to mid-1970s, L.R. Foy Construction Co., Inc. (Foy), owned and controlled by Lyle Foy, built several condominium buildings on a parcel that included, but was quite a bit larger than, the disputed parcel.  None of those buildings are on the disputed parcel.[1]  The disputed parcel is shown on the following diagram.

---

[1] The plan Foy submitted to the county for approval showed a building on the disputed parcel.  The record doesn't say why Foy didn't construct that building.



¶ 5     In late 1975, Foy conveyed the larger parcel — *but not*
*including the disputed parcel* — to Woodbridge.  (This conveyance
failed to conform to the development plan approved by the county,
which included the entirety of the larger parcel.  So the conveyance
may have been illegal because it subdivided the property without

the county's approval.)  Thereafter, and continuing through at least 2012, Woodbridge used the disputed parcel in a number of ways.

- Residents and guests skied across it to access a pedestrian bridge leading to a ski area.

- Woodbridge maintained sod previously installed by Foy for erosion control by regularly mowing, watering, fertilizing, and raking it.

- Residents and guests regularly used a gravel road running through the disputed parcel to access one of the buildings (Building 31) and to park on.

- Woodbridge maintenance personnel used the gravel road to access Building 31.

- Woodbridge maintained and put gravel on the gravel road.

- In 1992, and again in 1995, Woodbridge planted some pine trees on it.

- Also in 1995, Woodbridge used it as a staging area for a large construction project and built a berm just north of the gravel road.

- Woodbridge added a picnic table and split rail fence in 1997.

- Sometime in the late 1990s, Woodbridge planted aspen trees on it (some of which it later moved in 2004).

- In the early 2000s, Woodbridge put a chain across the gravel road to limit use of the gravel road to maintenance personnel.

- In 2004, Woodbridge installed signs on it that read "Woodbridge Condominiums," and Woodbridge installed lights and landscaping around the signs.

- Also in 2004, Woodbridge installed an in-ground sprinkler system to water the sod that covers most of the disputed parcel.

¶ 6    In sum, as the trial court said, "beginning in November 1975, Woodbridge maintained and used the [d]isputed [p]arcel as if it owned the parcel" — it used the property as an amenity and convenience for residents, guests, and maintenance personnel as if it were a part of the overall condominium development.

¶ 7     All this would seem, considered in a vacuum, to make out a

case for adverse possession of the disputed parcel.[2]  But, as the

prior division determined, a letter from Woodbridge to Foy in 1992

offering to buy the disputed parcel doomed that idea.

¶ 8     In early 1991, Woodbridge sent two letters to Foy asking for

permission to plant trees and shrubs on the disputed parcel.  Foy

responded with a letter offering to give such permission if

Woodbridge would agree to certain conditions.  (Foy made the offer

on behalf of the entity to which it had conveyed the property in

1989, an entity controlled by Mr. Foy.)  Woodbridge didn't agree to

those conditions, but then offered to buy the disputed parcel from

Foy in a June 1992 letter.[3]  Neither Foy nor the then-owner

responded to that offer.

---

[2] Indeed, as discussed below, the trial court found, following a bench trial, that Woodbridge had acquired the disputed parcel by adverse possession.

[3] There is some question whether these letters related to land within the disputed parcel.  But the trial court found that, by these letters, Woodbridge sought to plant on and then buy property owned by Foy's successor in title, including the disputed parcel, despite not knowing precisely what land that entity owned.

¶ 9     Woodbridge nonetheless continued to use the disputed parcel as if it owned it.  No record owner of the disputed parcel made any use of it for any purpose from 1975 until 2011.

¶ 10     Lo Viento ultimately purchased the disputed parcel at auction from a bankruptcy estate in 2010 for $2,500.  In 2011, Lo Viento presented plans to Woodbridge to build on the disputed parcel.[4]

## B.     This Litigation

¶ 11     On learning of Lo Viento's plans to build, Woodbridge told Lo Viento that it owned the disputed parcel by adverse possession.  It followed up by filing this case in August 2012, claiming title to the disputed parcel by adverse possession.  In the alternative, it sought a declaration that it has a prescriptive easement over the disputed parcel.  Lo Viento counterclaimed to reform the deed it had received from the bankruptcy estate and to quiet title.

¶ 12     Following a bench trial, during which the court visited the disputed parcel, the court found that Woodbridge had acquired title by adverse possession, explaining its ruling in a commendably

_____

[4] Lo Viento didn't do anything to interrupt Woodbridge's use of the disputed property until September 2012, when it filed its counterclaims.

thorough written order. Lo Viento appealed, and, as noted, a division of this court reversed.

¶ 13    The division reasoned that Woodbridge's June 1992 letter offering to buy the disputed parcel was, in essence, an admission "that it did not claim superior title or have any right to or ownership of the disputed parcel." Because "hostility requires the adverse possessor to claim exclusive ownership of the property," the 1992 letter torpedoed Woodbridge's adverse possession claim by interrupting the continuity of Woodbridge's adverse possession before the passage of the statutory eighteen-year vesting period that began in 1975. *Woodbridge I,* slip op. at 7 (citing *Anderson v. Cold Spring Tungsten, Inc.,* 170 Colo. 7, 11, 458 P.2d 756, 758 (1969)). The division also held that the June 1992 letter defeated any claim to adverse possession beginning in November 1993 (after the initial eighteen-year period beginning in 1975) because it showed that Woodbridge didn't believe it was the actual owner of the disputed parcel. *Id.* at 10 (citing § 38-41-101(3)(b)(II), C.R.S. 2019).[5] So the

---

[5] Under section 38-41-101(3)(b)(II), C.R.S. 2019, an adverse possession claimant can't prevail on a claim that would vest on or after July 1, 2008, unless it shows that it had a good faith belief

9

division reversed the order quieting title in Woodbridge and remanded the case to the trial court to quiet title in Lo Viento "and to consider Woodbridge's easement claims." *Id.* at 11.

¶ 14 On remand, the parties agreed that the court (a different judge than the one who had presided at trial) would rule without taking additional evidence. (And Lo Viento argued that the division's previous decision controlled.) After considering the parties' post-remand arguments and the record, the trial court found that Woodbridge had proved its right to a prescriptive easement, explaining its reasoning in yet another thorough written order. After additional briefing, the court issued a third detailed written order setting forth the geographical bounds, permissible uses, and nature of the easement. Lo Viento appeals these last two orders, which collectively make up the court's final judgment.

## II. Discussion

¶ 15 As noted, Lo Viento first challenges the trial court's finding that Woodbridge is entitled to an easement by prescription.

---

that it actually owned the property that was reasonable under the circumstances.

10

Alternatively, it challenges the court's findings as to the scope of the easement. We consider, and reject, these challenges in turn.

## A. The Existence of the Easement

¶ 16 In Colorado, "[a]n easement by prescription is established when the prescriptive use is: 1) open or notorious, 2) continued without effective interruption for the prescriptive period, and 3) the use was either a) adverse or b) pursuant to an attempted, but ineffective grant." *Lobato v. Taylor*, 71 P.3d 938, 950 (Colo. 2002) (citing Restatement (Third) of Property: Servitudes §§ 2.16, 2.17); *accord LR Smith Invs., LLC v. Butler*, 2014 COA 170, ¶ 14.

¶ 17 This case doesn't involve an attempted, but ineffective grant; Woodbridge's claim is based on adverse use. As to that element, Lo Viento argues that Woodbridge's use of the disputed parcel wasn't adverse because the prior division's holding that Woodbridge's June 1992 letter defeated Woodbridge's adverse possession claim is the law of the case and applies equally to Woodbridge's prescriptive easement claim. It argues in the alternative that Foy's July 1991 letter shows that Woodbridge's use of the disputed parcel was permissive, not adverse, as of mid-1991, so Woodbridge didn't show eighteen continuous years of adverse use from 1975 or from

mid-1991, as required by section 38-41-101(1).  (Or, put another way, Lo Viento argues that Woodbridge's adverse use was fatally interrupted during the prescriptive period.)

### 1.    Law

#### a.    Law of the Case

¶ 18    "[T]he law of the case doctrine 'provides that prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions.'"  *Stockdale v. Ellsworth*, 2017 CO 109, ¶ 37 (quoting *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999)).  "[T]he law of the case established by an appellate court must be followed on remand in subsequent proceedings before a trial court."  *San Antonio, Los Pinos & Conejos River Acequia Pres. Ass'n v. Special Improvement Dist. No. 1*, 2015 CO 52, ¶ 31.  "Conclusions of an appellate court on issues presented to it as well as rulings logically necessary to sustain such conclusions become the law of the case."  *Super Valu Stores, Inc. v. Dist. Court*, 906 P.2d 72, 79 (Colo. 1995).

b.     Adverse Use in the Prescriptive Easement Context

¶ 19     To obtain *title* to property by adverse possession, the claimant

"must prove that his possession . . . was actual, adverse, hostile,

under claim of right, exclusive and uninterrupted for the statutory

period." *Smith v. Hayden*, 772 P.2d 47, 52 (Colo. 1989).[6]  This

requirement means that the adverse possessor must claim exclusive

ownership of the occupied parcel; in the absence of such a claim, a

use isn't deemed "hostile."  *Id.* at 56; *Anderson*, 170 Colo. at 11,

458 P.2d at 758.

¶ 20     This conception of hostility (requiring claim to exclusive

ownership) is one aspect of the law of adverse possession that

differs from the law of prescriptive easements.  In the latter context,

an adverse use

> is a use made without consent of the
> landowner, or holder of the property interest
> used, and without other authorization.
> Adverse uses create causes of action in tort for
> interference with property rights. . . .  [Such]

---

[6] In addition, as previously noted, a party claiming fee simple title by adverse possession for which title would vest after July 1, 2008, must also prove that it had a good faith belief that it was the actual owner of the property that was reasonable under the circumstances.  § 38-41-101(3)(b)(II).

13

uses are adverse or hostile to the property owner in the ordinary sense of the words.

Restatement (Third) of Property: Servitudes § 2.16 cmt. b.  Put slightly differently, "[t]o be adverse, . . . a use must create a cause of action for interference with an interest in property like trespass, nuisance, or interference with a servitude benefit.  To be adverse, the use must be made without authority and without permission of the property owner."  *Id.* at cmt. f; *see also Matoush v. Lovingood*, 177 P.3d 1262, 1270 (Colo. 2008) ("When an easement is created by adverse possession, a party uses land that is not in his or her possession, and does so in a way that is adverse to the property rights of the party who possesses the land."); Restatement (Third) of Property: Servitudes § 2.16 cmt. a (when a prescriptive easement is claimed by adverse use, "a person begins using the property without the consent or authority of the owner and acquires a servitude if the use continues for the prescriptive period and [the use is open or notorious and continued without effective interruption]").

¶ 21     So while a party claiming adverse possession must show that it asserted exclusive ownership of the property during the

prescriptive period, a party claiming a prescriptive easement doesn't; in the latter context, the claimant need only show a nonpermissive or otherwise unauthorized use of property that interfered with the owner's property interests.[7]

¶ 22    A prescriptive easement claimant that shows that its use of the property was open and notorious and continuous for the statutory period is entitled to a presumption that its use was adverse. *Trueblood v. Pierce*, 116 Colo. 221, 233, 179 P.2d 671, 677

---

[7] To be sure, such a use without permission or authorization may support a claim of adverse possession. But such a showing is insufficient to show hostility; a claim of exclusive ownership is also required. In arguing that this requirement also applies to prescriptive easements, Lo Viento points to the following statement by Justice Kourlis in her dissenting opinion in *Lobato v. Taylor*, 71 P.3d 938 (Colo. 2002): "This court has consistently held that the same requirement of adversity applies to acquiring easement and profit rights by prescription as to the acquisition of title by adverse possession." *Id.* at 970-71 (Kourlis, J., dissenting). But Lo Viento takes that statement (which, in any event, is from a dissent) out of context. Justice Kourlis was arguing that Colorado courts had always required a showing of adversity to prove a prescriptive easement: she disagreed with the majority's decision to follow the Restatement's position that a prescriptive easement can also be created by an intended but ineffective grant. *See id.* at 971 ("Thus, the adoption of the second prong of the Restatement test, which can create a prescriptive right in the context of permissive, consensual use is contrary to our law, and I would decline to engraft it."). She wasn't saying that the adversity requirement is the same in both contexts in all respects.

(1947); *LR Smith Invs.*, ¶ 15; *Durbin v. Bonanza Corp.*, 716 P.2d 1124, 1129 (Colo. App. 1986); *see Brown v. Faatz*, 197 P.3d 245, 250 (Colo. App. 2008); Restatement (Third) of Property: Servitudes § 2.16 cmt. g, § 2.17 cmt. g. The landowner can rebut that presumption by showing that the claimant's use at any time during the statutory period was permissive. *Trueblood*, 116 Colo. at 233, 179 P.2d at 677; *LR Smith Invs.*, ¶ 15. But if the landowner doesn't meet that burden, and the claimant proves the other elements, the court must find a prescriptive easement. *Trueblood*, 116 Colo. at 233, 179 P.2d at 677; *LR Smith Invs.*, ¶ 15.

### 2. Standard of Review

¶ 23  A trial court's determination that a party is entitled to a prescriptive easement is one of fact. *See Brown*, 197 P.3d at 249; *Trask v. Nozisko*, 134 P.3d 544, 550 (Colo. App. 2006). And more specifically, whether a claimant's use of property was adverse to the owner's property interests is a question of fact, as is whether the use was permissive. *LR Smith Invs.*, ¶ 25; *Maralex Res., Inc. v. Chamberlain*, 2014 COA 5, ¶ 21; *cf. Smith*, 772 P.2d at 56 (in the adverse possession context, "whether possession is hostile or adverse is a question of fact to be determined by the trier of fact").

16

¶ 24    We review findings of fact for clear error, meaning that we won't disturb such findings if there is any evidence in the record supporting them. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1384 (Colo. 1994); *see LR Smith Invs.*, ¶ 17 (appellate court must accept trial court's findings concerning adversity of use if they have record support); *Weisiger v. Harbour*, 62 P.3d 1069, 1071 (Colo. App. 2002) (when the trial court bases its factual findings on competent evidence in the record, the appellate court won't disturb its determination regarding a prescriptive easement).[8]

¶ 25    But we review legal issues de novo. *Brown*, 197 P.3d at 249. Whether the trial court neglected to follow the law of the case or otherwise failed to apply correct legal principles — both of which Lo Viento asserts — are two such issues. *See Ledroit Law v. Kim*, 2015

---

[8] Lo Viento suggests that because the judge on remand relied on the previous judge's findings of fact, those findings are subject to "heightened scrutiny." But that test applies when a court adopts, virtually word for word, a *party's* proposed findings of fact. *See Uptime Corp. v. Colo. Research Corp.*, 161 Colo. 87, 92-93, 420 P.2d 232, 234-35 (1966); *Trask v. Nozisko*, 134 P.3d 544, 549 (Colo. App. 2006). That didn't happen here. So we review the court's findings of fact as we ordinarily do — for clear error, recognizing the trial court's unique perspective to determine the credibility of witnesses and weigh conflicting evidence.

COA 114, ¶ 47; *Hardesty v. Pino*, 222 P.3d 336, 339 (Colo. App. 2009).

### 3. Application: Woodbridge Proved Adverse Use

¶ 26 Lo Viento seizes on the prior division's conclusion that Woodbridge's June 1992 letter offering to buy the disputed parcel defeated Woodbridge's claim for adverse possession because it showed that Woodbridge "did not claim superior title or have any right of ownership to the disputed parcel." *Woodbridge I,* slip op. at 7. It argues that this conclusion is the "law of the case" as to whether Woodbridge's use of the disputed property was adverse because the prior division said that the letter "is sufficient to rebut the presumption of adversity raised by Woodbridge's possession." *Id.*[9]

¶ 27 But in so arguing, Lo Viento fails to recognize that, as discussed above, in contrast to a claim to title by adverse possession, a claim for a prescriptive easement by adverse use

---

[9] Lo Viento seems to equate the trial court's supposed failure to follow the law of the case with a failure to follow the prior division's mandate. But the prior division's mandate was to quiet title in Lo Viento "and to consider Woodbridge's easement claims." The trial court clearly did that. Whether the trial court followed the law of the case is a separate issue.

doesn't require a party to show that it asserted exclusive ownership during the prescriptive period. The prior division's conclusions about the June 1992 letter addressed only the requirement of adversity in the adverse possession context, and even then only as to whether Woodbridge had asserted exclusive ownership. Thus, the prior division's holding didn't control Woodbridge's prescriptive easement claim. *See Kuhn v. State, Dep't of Revenue*, 897 P.2d 792, 795 (Colo. 1995) (appellate court's prior decision wasn't law of the case as to an issue it didn't address); *Rodgers v. Colo. Dep't of Human Servs.*, 39 P.3d 1232, 1235 (Colo. App. 2001) (same).

¶ 28 To the extent Lo Viento argues as a matter of substantive law that Woodbridge's mere recognition of Lo Viento's predecessor's title in 1991 and 1992 necessarily defeats Woodbridge's claim of adverse use, that argument also fails.

¶ 29 True, "[u]ses made in subordination to the property owner are not adverse . . . ." Restatement (Third) of Property: Servitudes § 2.16 cmt. f. But

> [r]ecognition of the landowner's title is not the same as subordination to that title. Subordination requires that the user act with authorization, express or implied, from the landowner, or under a claim that is derivative

19

from the landowner's title. Use made in defiance of a recognized title is adverse to the title. The fact the user tried unsuccessfully to purchase a servitude from the landowner does not establish that his subsequent use was subordinate to the landowner's title. . . . A use is adverse even though made in the mistaken, but good faith, belief that the user is entitled to make it, and it is adverse even if the user acknowledges that the land is owned by another and the user has no right to make the use.

*Id.*; *cf. Warsaw v. Chi. Metallic Ceilings, Inc.*, 676 P.2d 584, 588 (Cal. 1984) (fact that claimants had tried to buy the parcel at issue or negotiate an express easement didn't show that use was permissive); *Rafanelli v. Dale*, 924 P.2d 242, 247-49 (Mont. 1996) (attempts to negotiate over access didn't show that use was permissive; claimants acted as if they had a right to use the access).

¶ 30        Woodbridge recognized that it didn't hold title, but there isn't any evidence that it acted in subordination to the owner's title. Indeed, the evidence is to the contrary: Woodbridge consistently treated the disputed parcel as if it belonged to Woodbridge and did so (as discussed further below) without express or implied authorization.

20

¶ 31     Lo Viento's reliance on *Trask* to support this argument is misplaced.  In that case, the division broadly stated as follows: "In general, when an adverse occupier acknowledges or recognizes the title of the owner during the occupant's claimed prescriptive period, the occupant interrupts the prescriptive use."  *Trask*, 134 P.3d at 553.  With all due respect to the division in *Trask*, that statement is too broad, as we hope the foregoing discussion makes clear.  *See In re Estate of Gattis*, 2013 COA 145, ¶ 27 (one division of the court of appeals isn't bound by the decisions of other divisions).  And the case *Trask* cites for this proposition, *Pagel v. Reyman*, 628 P.2d 166 (Colo. App. 1981), on which Lo Viento also relies, doesn't actually support it.  In *Pagel*, the parties executed an agreement recognizing the landowner's title.  *Id.* at 168.  This can be seen as an act in subordination of the owner's title.

¶ 32     In any event, we aren't bound by *Pagel* either.  *Pagel* cites an adverse possession case, *Segelke v. Atkins*, 144 Colo. 558, 357 P.2d 636 (1960), in support of its analysis.  *Pagel*, 628 P.2d at 168.  As discussed above, the rule in the prescriptive easement context concerning recognition of title differs from that which applies in the adverse possession context.

¶ 33 Lastly, Lo Viento argues that it rebutted the presumption of adverse use by submitting evidence that in 1991 its predecessor in title gave Woodbridge permission to landscape the disputed parcel. Lo Viento is correct that a grant of permission would rebut the presumption of adverse use. But the record refutes its argument.

In the letter on which Lo Viento relies, Foy said,

> The present owners have no objection to you landscaping the property they own as long as you have no claim for the property, trees, shrubs, etc. for the improvements and in the future if they decide to develop the area, the Woodbridge Condominium Association would not object to this as long as it was in keeping with the present properties.
>
> They also would like to have approval of one week's use in the winter and one week's use in the summer of one of the condominiums that is there now and they would only pay the service charges or the maid's service, whichever you call it[,] for the use of this property.

¶ 34 The trial court found that (1) the permission offered in this letter was conditional and (2) Woodbridge never agreed to the conditions. These findings are supported by record evidence, including the letter itself and witness testimony. So in the end, there was no permission. It follows that Lo Viento failed to rebut

22

the presumption of adverse use. And because Woodbridge established the other required elements — a conclusion Lo Viento doesn't contest — it is entitled to a prescriptive easement.

¶ 35 We turn then to Lo Viento's challenges to the trial court's findings as to the appropriate scope of the easement.

### B. The Scope of the Easement

¶ 36 The trial court ruled that Woodbridge has a prescriptive easement over most of the disputed parcel (all of it except the area south of the gravel road) for (1) maintaining the gravel road (as it currently exists) for purposes of providing access to the Woodbridge complex and parking along Building 31; (2) maintaining the disputed parcel as the entrance to the Woodbridge complex, with the rights to landscape the area, maintain signage, and use sprinklers and electrical lines; (3) skier access across the disputed parcel to the bridge; and (4) controlling drainage and erosion. And the trial court ruled that Woodbridge's easement is exclusive — that is, only Woodbridge can use the disputed parcel for the approved purposes. The following diagram shows by cross-hatching the portion of the disputed parcel south of the gravel road not subject to the easement.

23



¶ 37    Lo Viento attacks each aspect of the trial court's rulings as to

the scope of the easement.  As to the four approved categories of

uses specifically, Lo Viento essentially challenges the evidentiary

bases for the court's conclusions, though it mixes in a couple of

challenges to exclusivity.  As to exclusivity generally, Lo Viento

appears to argue that Colorado law doesn't allow for exclusive prescriptive easements at all.

## 1. Standard of Review

¶ 38    The parties assert, citing *Cielo Vista Ranch I, LLC v. Alire*, 2018 COA 160, ¶ 65, that we should review the trial court's findings as to the scope of the easement for an abuse of discretion. We don't agree. The division in that case said that "[w]here compliance with the appellate mandate requires evidentiary or other post-remand factual determinations by the trial court, we review for an abuse of discretion." *Id.* But the division was considering whether the process employed by the trial court on remand conformed to the mandate. And the division cited *Murray v. Just In Case Business Lighthouse, LLC*, 2016 CO 47M, ¶ 16, which concerned a challenge to an evidentiary ruling. Lo Viento doesn't mount any such procedural or evidentiary challenge; rather, it challenges certain of the trial court's findings of fact and certain discrete principles of law applied by the trial court.

¶ 39    As already noted, we review a trial court's findings of fact for clear error, *M.D.C./Wood*, 866 P.2d at 1384, and we review legal issues de novo, *Brown*, 197 P.3d at 249.

25

## 2. Application: The Scope of the Easement is Appropriate

### a. Permissible Uses

¶ 40    Before addressing directly Lo Viento's arguments as to each of the four categories of permissible uses, we pause to acknowledge the legal principles governing any determination of permissible use under a prescriptive easement. The supreme court articulated those principles in *Wright v. Horse Creek Ranches*, 697 P.2d 384 (Colo. 1985):

- "[T]he extent of an easement created by prescription is fixed by the use through which it was created." *Id.* at 388 (quoting Restatement of Property § 477 (Am. Law Inst. 1944)).[10]

- "[T]he beneficiary of an easement established by prescription will be permitted to vary the use of the

---

[10] The current version of the Restatement appears to be consistent with this notion. *See* Restatement (Third) of Property: Servitudes § 2.17 cmt. f (Am. Law Inst. 2000) ("The interest or estate burdened by a prescriptive servitude is determined by the nature and extent of the use made during the prescriptive period and by the interest of the person who had the legal right to terminate the use before the prescriptive period expired."); *id.* at § 4.1(1) ("A servitude should be interpreted to give effect to . . . the circumstances surrounding creation of the servitude . . . .").

easement to a reasonable extent." *Id.* at 388-89. To determine "whether a particular use is permissible under an easement created by prescription a comparison must be made between such use and the use by which the easement was created with respect to (a) their physical character, (b) their purpose, [and] (c) the relative burden caused by them upon the servient tenement." *Id.* at 388 (quoting Restatement of Property § 478).

- In determining whether a particular use is permissible, the court should also consider "the needs which result from a normal evolution in the use of the dominant [estate] and the extent to which the satisfaction of those needs increases the burden on the servient estate." *Id.* at 389 (quoting Restatement of Property § 479).

¶ 41    With these principles, and the appropriate standard of review, in mind, we reject Lo Viento's challenges to the four categories of permissible uses found by the trial court as follows:

(1) *Gravel road.* Contrary to Lo Viento's suggestion, the evidence didn't show that the gravel road was used by pedestrians (other than Woodbridge residents and

27

guests) during the prescriptive period. The historic use of the bridge, on which Lo Viento relies, is beside the point because the bridge isn't part of the disputed property. And evidence supports the trial court's finding that the gravel road was regularly used by vehicles for access to and parking near the Woodbridge complex, and by Woodbridge residents, guests, and maintenance personnel exclusively. Thus, the trial court's determination of an exclusive easement for these purposes must stand.[11]

---

[11] Also, Lo Viento's reliance on *McIntyre v. Board of County Commissioners*, 86 P.3d 402, 413 (Colo. 2004), for the proposition that "[t]ravel over vacant land is deemed permissive and cannot serve as the predicate for a prescriptive use" is misplaced. The disputed property isn't truly vacant: it has a roadway, landscaping, and signage. 4 Richard R. Powell, *Powell on Real Property* § 34.10[2][c], at 34-97 (Michael Allan Wolf ed. 2016) (presumption of adversity may not apply if "the land over which the easement is claimed is open, unenclosed, and *unimproved*") (emphasis added). And, in any event, *McIntyre* involved a claim to a public prescriptive easement, a situation involving different considerations of public policy. *See also Lobato*, 71 P.3d 938 (approving private prescriptive easement over large swaths of vacant land); *Simon by Simon v. Pettit*, 651 P.2d 418 (Colo. App. 1982) (involving claim of a public prescriptive easement), *aff'd*, 687 P.2d 1299 (Colo. 1984).

(2) *Entrance to the Woodbridge complex.* Lo Viento's contention that the scope of the easement is fixed by the first use made of the disputed parcel — mowing, weeding, and watering to control drainage — is wrong on the law and inconsistent with the facts, as found by the trial court. The trial court found that Woodbridge made several different uses of the disputed parcel beginning as early as 1975, and Lo Viento cites no authority for the proposition that a prescriptive easement can have only one permissible use. Indeed, *Wright* holds to the contrary, adopting, as it did, sections 478 and 479 of the Restatement. And record evidence supports the trial court's findings that the additional uses Woodbridge made of the disputed property over the years — e.g., adding landscaping and signage — were consistent with the uses through which Woodbridge obtained the easement — all of which related to treatment of the disputed parcel as an entrance to the Woodbridge complex. Put another way, these additional uses were merely changes in degree,

not kind, and didn't add any appreciable burden to the servient estate.

(3) *Skier access.* The trial court found that skiers (Woodbridge residents and their guests) use the entirety of the developable portion of the disputed parcel. Lo Viento's argument that skiers only used a gravel path is nothing more than an invitation for us to reweigh the evidence. That isn't our role. *Gagne v. Gagne*, 2019 COA 42, ¶ 51; *IBC Denver II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 719 (Colo. App. 2008).[12]

(4) *Drainage and erosion control.* Lo Viento's challenge to this category of permissible uses is difficult to discern. It appears to want us to change the easement to "mandat[e] drainage control." But it isn't entirely clear how that is any different from what the trial court ordered. (Perhaps Lo Viento wants the use for drainage

---

[12] Lo Viento also asserts, in purely conclusory fashion, that allowing skier access over most of the disputed parcel "affects a taking in violation of . . . Article II, § 4 of the Colorado Constitution." We don't consider undeveloped and unsupported arguments. *Am. Family Mut. Ins. Co. v. Am. Nat'l Prop. & Cas. Co.*, 2015 COA 135, ¶ 42.

control to be not merely permissible, but mandatory.) And Lo Viento hasn't pointed us to any place in the record where it asked the trial court for this relief. We are a court of review, not first look. *See* C.A.R. 28(a)(7)(A) (the appellant's opening brief must indicate "the precise location in the record where the issue was raised and where the court ruled"); *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal.").

¶ 42    In sum, we don't see any error in the trial court's determinations as to the types of permissible uses.

### b.    Exclusivity

¶ 43    We also reject Lo Viento's contention that Colorado law doesn't recognize exclusive easements. The cases on which Lo Viento relies, *LR Smith Investments*, *Wright*, and *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229 (Colo. 1998), don't address that issue. But the Restatement recognizes that a prescriptive easement may be exclusive: "If the use is exclusive, the servitude

31

obtained is exclusive . . . ." Restatement (Third) of Property: Servitudes § 2.17 cmt. a; *see also Gray v. McCormick*, 84 Cal. Rptr. 3d 777, 785-87 (Cal. Ct. App. 2008); *Otay Water Dist. v. Beckwith*, 3 Cal. Rptr. 2d 223, 226-27 (Cal. Ct. App. 1991); 7 *Thompson on Real Property* § 60.04(a)(1)(iii), at 534 (2d David A. Thomas ed. 2006) (recognizing that an exclusive easement can occur by prescription). And the trial court found that Woodbridge's use was exclusive — a finding that enjoys record support.

¶ 44    Relatedly, Lo Viento seems to assert that the trial court went too far in determining how Woodbridge may use the disputed parcel because the approved uses effectively prevent Lo Viento from making any beneficial use of the property. But Lo Viento hasn't provided us with any coherent, developed argument on the point. We therefore don't address it. *See Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶¶ 39-40 (declining to address conclusory assertions offered without supporting argument or authority); *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d

14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development.").[13]

## III. Conclusion

¶ 45    We affirm the trial court's judgment.

JUDGE HARRIS and JUDGE BROWN concur.

---

[13] On the one hand, the current version of the Restatement recognizes that courts *in some circumstances* have been reluctant to find prescriptive easements when the use by the claimant is so extensive that the servient estate would be rendered valueless. Restatement (Third) of Property: Servitudes § 2.17 cmt. d and Note to cmt. d. On the other hand, the Restatement also recognizes that the owner's use of the servient estate is limited to any use that doesn't interfere with the easement holder's use consistent with the easement. *Id.* at cmt. a; *see also* Restatement of Property § 481 cmt. a (Am. Law Inst. 1944) ("The limitations of this privilege correspond with the extent of the easement."). "The possessor of land subject to an easement created by prescription is privileged, as against the owner of the easement, to make such uses of the servient tenement as are not incompatible with the use authorized by the easement." Restatement of Property § 481. And the prescriptive easement doctrine favors long-time users of property and penalizes owners who sleep on their rights, for several sensible reasons. Restatement (Third) of Property: Servitudes § 2.17 cmt. c. Lo Viento's deficient briefing precludes us from properly considering this relatively complicated issue, as does its failure to have developed a sufficient factual record for us to assess the accuracy of its claim that it is unable to make any beneficial use of the disputed parcel.