25CA1857 Peo in Interest of Abdurahman 12-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1857
City and County of Denver Probate Court No. 25MH266
Honorable Beth A. Tomerlin

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Rior Abdurahman,

Respondent-Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

Miko Brown, City Attorney, Kathleen Bell, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1　　Respondent, Rior Abdurahman, appeals the probate court's order authorizing the staff at Denver Health Medical Center (hospital) to medicate him involuntarily.  We reverse the portion of the order authorizing the involuntary administration of Risperdal and Invega and remand with directions to vacate that portion of the order.  We otherwise affirm.

## I.　Background

¶ 2　　Abdurahman was committed to the hospital in February 2025 after being found incompetent to proceed in a criminal case.  He was diagnosed with schizophrenia and exhibited disorganized, paranoid, and aggressive behavior.  The People petitioned the probate court for authorization to treat Abdurahman with various antipsychotic,  antianxiety, and side effect mitigating medications.  In April, after a hearing, the court granted the petition.

¶ 3　　Four months later, the People filed a petition to renew the April involuntary treatment order.  The People requested authorization to treat Abdurahman with

- four antipsychotic medications: Haldol (haloperidol), Invega (paliperidone), Risperdal (risperidone), and Zyprexa (olanzapine);

1

- one antianxiety medication: Ativan (lorazepam); and

- two medications to treat potential side effects: Benadryl (diphenhydramine) and Cogentin (benztropine).

¶ 4     The probate court held an evidentiary hearing, at which Dr. James Haug, Abdurahman's psychiatrist, and Abdurahman testified. Dr. Haug described Abdurahman's disorder and accompanying symptoms. He also described the requested medications, explained their possible side effects, and opined that the medications (apart from Ativan, which he withdrew from his request) were necessary to treat Abdurahman's symptoms. Abdurahman denied having a mental illness and explained that he was unwilling to take the requested medications, in part because of his Muslim belief that "[y]ou got [a] right to refuse." He also testified that he had experienced various side effects from the medications, including weight gain, seizures, difficulty breathing, and difficulty sleeping.

¶ 5     The probate court found that Dr. Haug's testimony was "essentially uncontroverted" and "credible," and that the People had proved the criteria set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). Accordingly, the court granted the petition and issued

2

an order authorizing the involuntary administration of the requested medications.

## II.  Applicable Law and Standard of Review

¶ 6    A probate court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to themself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Id.*

¶ 7    Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the probate court's factual findings if they have record support and review its legal conclusions de novo. *Id.* It is for the probate court, as the fact finder, to determine the credibility of witnesses; the sufficiency, probative effect, and the weight of the evidence; and the

inferences and conclusions to be drawn from the evidence. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

¶ 8     When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the treating psychiatrist alone may suffice. *Id.* at ¶ 30.

### III.    Analysis

¶ 9     Abdurahman challenges the sufficiency of the evidence supporting the order. In particular, he contends that the evidence was insufficient to support the probate court's findings that the third and fourth *Medina* elements were met. We address each contention in turn.

### A.    Less Intrusive Alternative

¶ 10    First, we address Abdurahman's contention that the evidence was insufficient to prove the third *Medina* element — that a less intrusive treatment alternative is not available. *Medina*, 705 P.2d at 973. This element "encompasses not only the gravity of any harmful effects from the proposed treatment but also the existence,

4

feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition." *Id.* at 974. A less intrusive alternative is "an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed treatment." *People in Interest of Strodtman*, 293 P.3d 123, 133 (Colo. App. 2011).

¶ 11   Abdurahman objects to the probate court's authorization of "all of the medications," but in particular he contends that because he is being successfully treated with Zyprexa, the evidence does not support the authorization of Haldol, Risperdal, and Invega as backup antipsychotics.[1] We agree in part.

¶ 12   In *R.C.*, a division of this court concluded that "[t]he possibility that [a medication] may no longer be an effective treatment . . ., at some unspecified time in the future, is insufficient to justify" an order authorizing backup medications. *R.C.*, ¶ 14. Another division

---

[1] Because Abdurahman does not develop his argument regarding the side effects of Benadryl and Cogentin we do not address them further. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12 (declining to consider undeveloped arguments), aff'd, 2021 CO 56.]

of this court has concluded that to justify an order permitting the involuntary authorization of a backup medication, there must be a specific articulable concern that the primary medication could be ineffective based on the respondent's medical history. *People in Interest of D.N.W.*, 2024 COA 129, ¶ 18. And in *People in Interest of Ferguson*, 2025 COA 82, ¶ 1, a division concluded that if the treating physician lacks sufficient knowledge of the patient's medical history, articulates a reasonable plan for the sequence in which the backup medications will be administered, and demonstrates a need for flexibility in treatment options, the court may authorize involuntary authorization of backup medications.

¶ 13 After considering these authorities, we conclude that the evidence in the record was insufficient to support the court's determination regarding the involuntary administration of Risperdal and Invega.

¶ 14 The probate court rested its legal conclusion regarding a less drastic alternative on its finding that while Abdurahman had been taking Zyprexa and "ha[d] been doing pretty well on that medication," the other medications were needed either to accommodate a request from Abdurahman if there was "another

medication from the list that he would like to try," or "due to [Abdurahman's] complaints of experiencing side effects from Zyprexa."

¶ 15     We discern no record evidence supporting the probate court's finding that Abdurahman would want to try another medication. Abdurahman unequivocally testified that he did not want to take any medication and Dr. Haug agreed, testifying that "it has not been [his] experience that [Abdurahman] will voluntarily take medications."  More fundamentally, if Abdurahman was willing to voluntarily take an alternative medication that may be  equally as effective as Zyprexa with less adverse side effects, there would be no need for a court order permitting the alternative on an involuntary basis.

¶ 16     Likewise, there is no  record support for the court's finding that Abdurahman would want to try another medication to relieve any side effects experienced from Zyprexa.  To the contrary, Dr. Haug testified that "in the past" he discussed with Abdurahman the possibility of switching medications to relieve certain side effects Abdurahman was experiencing, but it has been Abdurahman's "preference" not to change medication.

¶ 17    According to Dr. Haug's testimony, Abdurahman is "doing pretty well" on Zyprexa and his proposed treatment plan is to continue treating him with Zyprexa, indicating that Zyprexa is an effective treatment. Dr. Haug explained his rationale for requesting backup antipsychotics as follows: "to accommodate [Abdurahman's] interests," "if he has a different medication [that] he's open to trying." We conclude that this nonspecific speculation is insufficient to justify an order authorizing the involuntary administration of Risperdal and Invega. *See R.C.*, ¶ 16. Moreover, Dr. Haug did not explain why Abdurahman's medical history justified the requested backup medications under *Ferguson*. And, as previously noted, if Abdurahman is ever "open to trying" a different antipsychotic medication, a court order is not required to accommodate that request.

¶ 18    We are not persuaded otherwise by the People's argument that the probate court's authority to authorize backup medications is not restricted solely to the circumstances presented in *D.N.W.* and *Ferguson*. We agree with the People that *D.N.W.* and *Ferguson* are factually distinguishable from this case. But the People do not provide a compelling reason (nor do we perceive one) why we should

depart from the established precedent that the *Medina* elements do not allow for a backup plan in the absence of a specific articulable concern that the approved treatment strategy will be ineffective. *See R.C.,* ¶ 16 (finding that ordering the administration of one medicine, which would have the desired effect, was a "less intrusive alternative" than authorizing the administration of six medications, when the doctor testified that the patient did not need all six at the time of the hearing, and may not need them in the future); *cf. Marquardt,* ¶ 21 (holding that "the abstract possibility that a patient's condition may deteriorate in the future is insufficient to support a *Medina* order"); *R.K.L.,* ¶ 44 (concluding that "mere speculation that [the patient] might need these medications in the future . . . . did not prove that [his] prognosis without treatment by . . . ten antipsychotic medications" was sufficiently problematic to satisfy the fourth *Medina* element).

¶ 19       The record indicates that Abdurahman is being successfully treated with Zyprexa and that Risperdal and Invega are only being requested based on the speculative proposition that their administration may be warranted if his condition changes. But "mere speculation" that Abdurahman "might need" (or want) the

9

additional medications in the future does not show that his psychiatrist was "*currently* unable to treat [him] without the authority to administer them," especially because Dr. Haug "testified that [his current medication] was an effective treatment." *R.K.L.*, ¶ 44.

¶ 20    We reach a different conclusion regarding Haldol. Dr. Haug testified that Haldol was necessary in the event Abdurahman declined to take the oral formulation of Zyprexa and the hospital did not have the intramuscular formulation of Zyprexa available. Given Abdurahman's history of refusing to take medication voluntarily, this testimony provides a specific articulable concern sufficient to justify the involuntary treatment with Haldol, under the narrow circumstances described.

¶ 21    Accordingly, because we conclude that the evidence is not sufficient to support the probate court's finding that the third *Medina* element is satisfied with respect to Risperdal and Invega, we reverse this part of the court's order.

## B. Need for Treatment and Legitimate Interest in Refusing Treatment

¶ 22 Next, we address Abdurahman's contention that the evidence was insufficient to prove the fourth *Medina* element — that his need for the requested medications is sufficiently compelling to override his bona fide and legitimate interest in refusing to take them. In assessing this element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 23 Pointing to the side effects he has experienced and his religious preference not to take medication, Abdurahman summarily asserts that "[a]ll of these interests combined are not outweighed by [his] need for treatment." But Abdurahman does not address the other side of the equation — his need for the medications. The probate court *accepted* Abdurahman's assertion that he had bona fide and legitimate reasons for refusing to take the

requested medications — both based on his avoidance of unwanted side effects and his religious objection. But it found that Abdurahman's need for the medications outweighed those concerns.

¶ 24     The record supports the probate court's findings. Dr. Haug opined that the failure to medicate Abdurahman would be more harmful than the risks posed by the requested medications. In support of this opinion, Dr. Haug testified that the gravity of Abdurahman's illness is "[p]retty severe," the requested medications are "[one] hundred precent" essential to effective treatment, and without them, Abdurahman "would deteriorate." Dr. Haug described Abdurahman's behavior before he was medicated as "bizarre" and "threatening," but once medicated "he stopped being as aggressive and his discussions were more linear and more organized." Because the record supports the court's findings, we may not second-guess them. *See R.K.L.,* ¶ 13.

## IV.   Disposition

¶ 25     The order is reversed to the extent it authorizes the involuntary administration of Risperdal and Invega, and the matter

is remanded to the probate court with directions to vacate that part of the order.  In all other respects, the order is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.