25CA1953 Peo in Interest of Twomey 01-08-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1953
Pueblo County District Court No. 22MH400
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Richard Hugh Twomey,

Respondent-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 8, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1      Richard Hugh Twomey appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to involuntarily administer medication to him.  He contests the sufficiency of the evidence supporting the order.  We affirm.

## I.      Background

¶ 2      Twomey was committed to CMHHIP in 2022 after he was found not guilty by reason of insanity in a criminal case.  He is currently confined there and has been diagnosed with schizoaffective disorder, bipolar type.  His symptoms include depression, increased energy, decreased need for sleep, auditory hallucinations, and grandiose, paranoid, and religious delusional beliefs.  He has a history of refusing medications, and when untreated or undertreated, his mental health significantly deteriorates.

¶ 3      In September 2025, the CMHHIP psychiatrist responsible for Twomey's care and treatment, Dr. Martin Ahern, sought an order authorizing involuntary medications.  Namely, Dr. Ahern sought the involuntary administration of Cariprazine (Vraylar), valproic acid (Depakote), Clozapine, and Haloperidol.  Although Twomey

expressed a willingness to voluntarily take medication, Dr. Ahern testified that Twomey had verbally agreed in the past when it was "clear . . . [his agreement] d[id] not represent a genuine desire to treat" his symptoms.

¶ 4     Consistent with *People v. Medina,* 705 P.2d 961 (Colo. 1985), the People filed a petition asserting that (1) Twomey is incapable of effectively participating in decisions affecting his health and treatment; (2) the requested treatment is necessary to prevent a significant and likely long-term deterioration in his mental health condition or to prevent the likelihood of him causing serious harm to himself or others; (3) a less intrusive treatment alternative is not available; and (4) Twomey's need for treatment is sufficient to override any bona fide and legitimate interests he has in refusing treatment.

¶ 5     At a hearing on the People's petition, the district court heard testimony from Twomey and Dr. Ahern and considered Dr. Ahern's affidavit in support of the administration of involuntary medication, which was admitted into evidence without objection. At the end of the hearing, the court found that Dr. Ahern testified credibly and persuasively. The court concluded that the People had proved all

four *Medina* elements and issued an order authorizing hospital staff to administer the requested medications to Twomey involuntarily.

## II.     Standard of Review

¶ 6     When, as here, a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we review the district court's legal conclusions de novo but defer to its factual findings if they have record support. *People v. Marquardt*, 2016 CO 4, ¶ 8. We view the evidence as a whole and in the light most favorable to the petitioning party, leaving the resolution of testimonial conflicts and the determination of witness credibility solely to the fact finder. *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57; *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. As the fact finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *R.C.*, ¶ 7.

## III.     Discussion

¶ 7     A district court may order the involuntary administration of medication to a patient only if the People prove, by clear and convincing evidence, each of the four elements outlined in *Medina*,

705 P.2d at 973.[1]  Twomey does not contest the second or third

*Medina* elements.  However, he contends that the evidence

presented at the hearing was insufficient to prove the first and

fourth element — namely that he is incompetent to effectively

participate in the treatment decision and that his need for

treatment is sufficient to override any bona fide and legitimate

interests he has in refusing treatment.  We are not persuaded.

A.   Twomey Is Incompetent to Effectively Participate in Treatment Decisions

¶ 8     At the hearing, Twomey testified that he was willing to take the

requested medications as needed.  However, he did not

acknowledge the severity of his mental illness, instead testifying

that "it is a little bit confusing because different professionals have

said different things" at CMHHIP.  And he denied having religious

---

[1] When the state seeks to administer antipsychotic drugs to a mentally ill criminal defendant involuntarily so that he can stand trial, a reviewing court applies the Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 178 (2003).  However, reviewing courts apply state law tests if the state, as here, seeks to administer antipsychotics involuntarily for "a different purpose," including a purpose "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts his health gravely at risk."  *Id.* at 181-82.

delusions and paranoia. He also denied that he was moved to a higher security unit based on those delusions and his disturbing behavior.

¶ 9 Dr. Ahern testified that Twomey does not have insight into his mental illness. He acknowledged that Twomey recognizes he has been diagnosed with schizoaffective disorder, but upon further evaluation, Twomey believes he experiences only depression and lacks insight into any of his delusional beliefs or manic episodes that cause him to act out in verbally aggressive and physically intrusive ways. Dr. Ahern explained that when staff reminds Twomey of his behaviors, he insists that the staff has "lied and . . . misrepresented" the information. Dr. Ahern testified that Twomey could participate in treatment decisions "to some degree" as it relates to his ability to report side effects, but his lack of insight prevents him from participating in selecting an appropriate medication regimen.

¶ 10 Nonetheless, Twomey asserts that he is willing to take medications voluntarily, so the court order is unnecessary. The court acknowledged Twomey's testimony that he was willing to take the prescribed medications but did not find him credible because he

5

had previously agreed to take medications voluntarily and later changed his mind. The court further noted that Dr. Ahern was asking for a change in medication to Clozapine. And Dr. Ahern testified that Twomey had a pattern of refusing medications when there were changes in the type or dosage. Moreover, Dr. Ahern explained that a change to Clozapine had to be closely monitored and required a "high degree of patient compliance" and that he believed Twomey would not comply to the degree necessary given his history of noncompliance with voluntary medication.

¶ 11     Given this evidence and the district court's superior position to assess credibility, it did not err when it found Twomey incompetent to effectively participate in his treatment decisions.

### B.     Twomey's Need for Treatment Overrides His Bona Fide and Legitimate Interest in Refusing Treatment

¶ 12     The district court found Twomey had bona fide and legitimate reasons for refusing treatment, including side effects from the medication in the form of a tremor and sedation. However, it credited Dr. Ahern's testimony that Twomey's need for treatment outweighed those interests.

¶ 13　The district court found that Twomey continued to have persistent religious delusions and credited Dr. Ahern's testimony that the switch to Clozapine was to address Twomey's paranoia and delusions. And it noted that the evidence established that the side effects have been mitigated somewhat and that Twomey was able to continue with "day-to-day life."

¶ 14　The district court found that the involuntary medication order was necessary to protect the safety of others, noting Twomey's preoccupation with "hyper-religious beliefs," "beliefs that staff and peers were evil or satanic," and his "accusatory and threatening statements." And the court noted Twomey's prior violent physical behavior including an incident where he required a "manual hold and locked door seclusion."

¶ 15　On appeal, Twomey does not dispute the district court's findings. Rather, he simply lists the potential side effects of the requested medications and reiterates that he experienced a tremor and sedation from his current medication regimen. He provides no explanation, however, why his interests in refusing treatment outweigh his need for it. *See Woodbridge Condo. Ass'n, Inc. v. Lo*

*Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n. 12 (declining to consider undeveloped arguments), *aff'd*, 2021 CO 56.

¶ 16    Because the record supports a finding that Twomey's prognosis without medication is so unfavorable that any bona fide and legitimate interest in refusal must yield to the People's legitimate interests in preserving his health and in protecting the safety of those at CMHHIP, we will not disturb it. *See Uwayezuk*, ¶ 57. To the extent Twomey asks us to reweigh the evidence, we decline to do so. *See R.C.*, ¶ 7.

## IV.    Disposition

¶ 17    We affirm the order.

JUDGE BROWN and JUDGE MEIRINK concur.