26CA0558 Peo in Interest of Lozsi 06-04-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0558
Pueblo County District Court No. 26MH30027
Honorable Gregory J. Styduhar, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Brian Tolley Lozsi,

Respondent-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Respondent, Brian Tolley Lozsi, appeals the district court's March 16, 2026, order authorizing the involuntary administration of antipsychotic medications for the purpose of restoring him to competency to stand trial in a criminal case. We affirm.

I. Background

¶ 2 Lozsi was charged with multiple felonies in Adams County Case No. 24CR156 and found incompetent to stand trial. He was ordered to undergo competency restoration and has been receiving inpatient treatment at the Colorado Mental Health Hospital in Pueblo, where his psychiatrist diagnosed him with delusional disorder. This disorder causes him to be detached from reality and to express persistent delusions primarily of a sexual nature.

¶ 3 After Lozsi began refusing antipsychotic medication, the People petitioned the district court to authorize the involuntary administration of two medications. Following a hearing on March 16, 2026, the court found that the People had satisfied the four factors required by *Sell v. United States*, 539 U.S. 166, 178 (2003), for the involuntary administration of medications to restore a person's competency to stand trial. Therefore, the court granted the petition and authorized the involuntary administration of Risperdal

1

(risperidone), with Haldol (haloperidol) injections as a backup option in the event Lozsi refused Risperdal. The court also ordered all necessary lab work and testing to monitor the medication levels and side effects. By its express terms, and "unless otherwise ordered by the court," the order "continue[s] through the completion" of Lozsi's Adams County criminal trial in case no. 24CR156.

## II. Discussion

¶ 4 Lozsi contends that the evidence presented at the hearing was insufficient to support the involuntary medication order. Though he concedes that sufficient evidence supported the first, third, and fourth *Sell* factors, he argues that the evidence was insufficient to support the second factor. We disagree.

### A. Standard of Review

¶ 5 Divisions of this court have issued varying opinions about the appropriate standard of review when applying the *Sell* factors. *Compare People in Interest of Hardesty*, 2014 COA 138, ¶¶ 15-17 (identifying eight *Sell* factors and applying both the de novo and clear error standards to the first factor, de novo review to the second factor, and clear error review to the remaining six factors),

2

*with People in Interest of R.F.*, 2019 COA 110, ¶ 21 (identifying four *Sell* factors and applying de novo review to the first factor and clear error review for the remaining three factors).  *See also People in Interest of Joergensen*, 2022 COA 126, ¶¶ 11-12 (noting that there are "four [*Sell*] elements" and stating that "[t]he resolution of a *Sell* motion presents a mixed question of fact and law").

¶ 6        Although Lozsi asserts that our review is de novo, we agree with *R.F.* that a district court's findings with respect to the second *Sell* factor — the only factor that Lozsi contests — are factual in nature and we therefore review such findings for clear error.  *R.F.*, ¶ 21.  Clear error review means that we will not disturb a court's factual findings if there is any evidence in the record to support them.  *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 24, *aff'd*, 2021 CO 56.

## B.    Analysis

¶ 7        The United States Supreme Court has established a four-part test for determining when a state may involuntarily administer antipsychotic medication to render a criminal defendant competent to stand trial.  *See Sell*, 539 U.S. at 180-81; *R.F.*, ¶ 21.  The People bear the burden of proving each part of the test by clear and

convincing evidence. *R.F.*, ¶ 16. As pertinent here, the second *Sell* factor requires proof that administering involuntary medication will "*significantly further*" an important governmental interest. *Sell*, 539 U.S. at 180. The People satisfy the second *Sell* factor by showing that administering the medication is substantially likely to restore the defendant's competency to stand trial and the medication is substantially unlikely to have side effects that will interfere with the defendant's ability to assist in his defense. *Id.* at 181; *R.F.*, ¶ 13.

¶ 8    Lozsi asserts that there was insufficient evidence to establish that the proposed treatment plan is substantially unlikely to have side effects that will interfere with his ability to assist in his defense, and that the district court erred by concluding otherwise.[1] He points to evidence of his ongoing evaluation for gastrointestinal (GI) disturbances and to testimony that antipsychotic medications are known to sometimes produce GI side effects, including nausea, vomiting, and diarrhea. Such potential side effects, he argues,

---

[1] In his reply brief, Lozsi focuses for the first time on the first subfactor of the second *Sell* factor and argues that the state failed to establish by clear and convincing evidence that the proposed involuntary medications were substantially likely to restore him to competency. But we do not address issues raised for the first time in a reply brief. *See People v. Cline*, 2022 COA 135, ¶ 75 n.3.

"raise a legitimate risk that the proposed treatment could hinder, rather than preserve, [his] ability to consult with counsel and participate effectively in his defense."

¶ 9 However, Lozsi's treating psychiatrist, Dr. Zachary Wickline, testified to the contrary. Dr. Wickline was qualified and accepted without objection as an expert in the field of clinical psychiatry. Based on his contact with Lozsi as his supervising psychiatrist, his review of Lozsi's medical records and charts, and his clinical experience, Dr. Wickline opined that the requested medications would be "substantially unlikely to create side effects that will significantly interfere with [Lozsi's] ability to assist counsel in conducting a trial defense." Dr. Wickline further testified that the medications would be "very unlikely to produce side effects that would . . . interfere with [Lozsi's] ability to stand trial."

¶ 10 Asked for the basis of his opinion, Dr. Wickline responded that Risperdal is "one of the most common antipsychotics we use. It's usually well tolerated. And if there are side effects, they are usually short lived. If they are more chronic, they're mild." Dr. Wickline also opined that it was "very unlikely" that Lozsi would be unable to tolerate the medications as a result of his GI issues, and that those

issues were clinically unlikely to be exacerbated or worsened by the medications because "the mechanisms by which [such issues] occur are so different."

¶ 11    The district court found that "the administration of the drugs is substantially unlikely to have side effects that would interfere significantly with [Lozsi's] ability to assist counsel in conducting a trial defense."  Although the court recognized "the possibility that there might be some reaction, some interference with GI issues as provided in the testimony," it credited Dr. Wickline's testimony that, in his experience, such side effects are well tolerated, mild, and short lived.  The court also credited Dr. Wickline's testimony that, rather than hinder Lozsi's understanding of the legal proceedings, the requested medications would help Lozsi "navigate" the legal system without the interference caused by his delusions.

¶ 12    We are not free to disregard the court's reliance on Dr. Wickline's testimony, which is sufficient to support the court's findings regarding the second *Sell* factor.  *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57 (leaving to the fact finder the resolution of conflicts in the testimony and the determination of the witnesses' credibility).  And Lozsi does not contest the court's

6

findings with respect to the three other *Sell* factors, so we need not address them.

## III.  Disposition

¶ 13    The order authorizing the involuntary administration of medications is affirmed.

JUDGE LIPINSKY and JUDGE YUN concur.