25CA2316 Peo in Interest of Lockley 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2316
Pueblo County District Court No. 25MH30116
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Nefretarie Lockley,

Respondent-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUSTICE MARTINEZ*
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Respondent, Nefretarie Lockley, appeals the district court's order authorizing the involuntary administration of antipsychotic medication for the purpose of restoring her to competency to stand trial in two criminal cases. We affirm.

## I.     Background

¶ 2     Lockley was charged with multiple felonies and found incompetent to stand trial in two cases. She was ordered to undergo competency restoration and has been receiving inpatient treatment at the Colorado Mental Health Hospital in Pueblo (the hospital) since her admission in October 2025.

¶ 3     At the hospital, Lockley was diagnosed with schizoaffective disorder, bipolar type, which causes her to exhibit disorganized speech, delusions, depressed episodes, mania, and flight of ideas. While Lockley initially agreed to take Latuda, an antipsychotic medication, she subsequently refused all other antipsychotic medications.

¶ 4     In November, the People petitioned the district court to authorize the involuntary administration of antipsychotic medication to restore Lockley to competency. After a hearing, the court held that the People had satisfied all four elements required

by *Sell v. United States*, 539 U.S. 166 (2003), for the involuntary administration of medication to restore a person's competency. Therefore, the court granted the petition and authorized the involuntary administration of Invega and Zyprexa, both of which are antipsychotic medications; however, the court declined to authorize treatment with Latuda.  (Zyprexa is also a mood stabilizer.)

## II.    Sufficiency of the Evidence

¶ 5     Lockley argues that the evidence presented at the hearing was insufficient to support the involuntary medication order.  While she concedes that sufficient evidence supports the first, third, and fourth elements set forth in *Sell*, she says the evidence did not support the second element.  We disagree.

## A.    Standard of Review

¶ 6     Divisions of our court have divided about the appropriate standard of review for application of the *Sell* elements.  *Compare People in Interest of Hardesty*, 2014 COA 138, ¶¶ 15-17 (identifying eight *Sell* elements and applying a mixed question review to the first element, de novo review to the second element, and clear error review to the remaining six elements), *with People in Interest of R.F.*, 2019 COA 110, ¶ 21 (identifying four *Sell* elements and applying de

2

novo review to the first element and clear error review for the remaining three elements); *see also People in Interest of Joergensen,* 2022 COA 126, ¶¶ 11-12 (noting that there are "four [*Sell*] elements" and stating that "[t]he resolution of a *Sell* motion presents a mixed question of fact and law").

¶ 7 We agree with the division's reasoning in *R.F.* and review the district court's factual findings concerning the second *Sell* element for clear error. Clear error review means we will not disturb a court's factual findings if there is any evidence in the record to support them. *Woodbridge Condo. Ass'n, Inc. v. Lo Viento Blanco, LLC,* 2020 COA 34, ¶ 24.

### B. Applicable Law

¶ 8 As noted, the United States Supreme Court has established a four-part test for determining when a state may involuntarily administer antipsychotic medication to restore a defendant's competency in a criminal proceeding. *See Sell,* 539 U.S. at 180-81; *see also R.F.,* ¶ 21. The People bear the burden of proving each part of the test by clear and convincing evidence. *R.F.,* ¶ 16. First, there must be important governmental interests at stake. *Sell,* 539 U.S. at 180; *R.F.,* ¶ 12. Bringing to trial a person accused

3

of a serious crime is an important governmental interest. *Sell*, 539 U.S. at 180; *R.F.*, ¶ 12.

¶ 9 Second, administering involuntary medication must significantly further those interests. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 13. The state satisfies this element by showing that (1) administering the medication is substantially likely to restore the defendant's competency and (2) the medication is substantially unlikely to have side effects that will interfere with the defendant's ability to assist in her defense. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 13.

¶ 10 Third, the medication must be necessary to further the government's interests. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 14. The state satisfies this element by showing that (1) any less intrusive treatment alternatives are unlikely to achieve substantially the same results and (2) less intrusive means for administering the medication were considered. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 14.

¶ 11 Fourth, administering the medication must be medically appropriate. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 15.

### C. Analysis

¶ 12 Lockley asserts that there was insufficient evidence to establish the second *Sell* element — that is, that the involuntary

4

administration of the requested medication would significantly further the state's interest in prosecuting her. In particular, she contests the district court's finding that the proposed treatment plan is substantially unlikely to have side effects that would interfere with her ability to assist in her defense.

¶ 13 First, Lockley alleges that the side effects she previously experienced from Latuda — including "nausea, bodily tremors, feelings of loss of control, difficulty remaining calm, discomfort outside her normal mental state, and restlessness in her limbs" — "risk impairing her ability to think clearly and communicate effectively with counsel." But the district court declined to order the involuntary administration of Latuda based on Dr. Graham Hoffman's testimony that (1) Latuda would only be provided if Lockley requested it and (2) there was "[n]ot a huge risk" in returning to court to add another medication if it was needed. *See People in Interest of Ferguson*, 2025 COA 82, ¶ 1 (a treating physician's demonstrated need for flexibility in treatment options is a relevant consideration for the authorization of more than one medication option). Accordingly, we do not address this contention.

¶ 14    Next, Lockley alleges that the side effects she experienced when she took Invega (seizures) and the possible side effects of Zyprexa (sedation) risk impairing her ability to assist in her defense. But Dr. Hoffman testified that the chance of Invega causing a seizure was "extremely unlikely" — less than 0.001 percent.  He also explained that the sedation that sometimes occurs with Zyprexa "seems to disappear" after "a few months."  Dr. Hoffman assured the court that the hospital personnel would monitor Lockley for side effects and that additional medications were available to neutralize some of those side effects, should they occur. He also testified that treatment with the requested medications would not interfere with Lockley's ability to understand and participate in her criminal proceedings; rather, "she'll be even more ready to participate in her defense when she's thinking more clearly, and the meds are designed to do that."  Further, Dr. Hoffman testified that the failure to medicate Lockley would be more harmful than the risks posed from the requested medications because, without treatment, Lockley's condition could become permanent such that she will never be restored to competency.

¶ 15    Based on this testimony, the district court found that administering Invega and Zyprexa would significantly further the important governmental interests at stake. The court further found that the administration of the requested medication was substantially likely to render Lockley competent to stand trial and was substantially unlikely to have side effects that would interfere significantly with her ability to assist her counsel in conducting a trial defense, thereby rendering the trial unfair. In so finding, the court specifically found that Dr. Hoffman testified "credibly and persuasively," while Lockley's testimony was generally not credible, and specifically not credible regarding her report that Invega and Zyprexa caused her side effects.

¶ 16    Because there is factual support for the district court's findings, they are not clearly erroneous. Accordingly, we must uphold the court's finding that the People met their burden to establish the second *Sell* factor by clear and convincing evidence.

### III.    Disposition

¶ 17    The order is affirmed.

JUDGE TOW and JUDGE LIPINSKY concur.